THE FAUSETT COMPANY *v.* Sheldon RAND

CA 81-51                                    619 S.W. 2d 683

Court of Appeals of Arkansas
Opinion delivered August 19, 1981

*Wright, Lindsey & Jennings*, for appellant.

*Wallace & Hamner*, for appellee.

MELVIN MAYFIELD, Chief Judge. Sheldon Rand was one of several partners who owned a shopping center in Little Rock. The Fausett Company was the rental agent for the shopping center and also acted as the real estate agent for the partnership when the shopping center was sold in October of 1979.

After the sale, Rand brought suit against Fausett in the Circuit Court of Pulaski County alleging that he was entitled to $33,600.00 as his pro rata share of the selling price which Fausett had collected but refused to distribute to him.

Fausett's answer alleged that one of the tenants of the shopping center was Shelly Rand's Phase II, Inc., a store owned by Rand which had gone out of business owing the shopping center $8,265.63 for monthly rentals and other fees and dues, and that Rand had agreed this amount could be deducted from his portion of the money from the sale of the shopping center. The answer also alleged that even if Phase II was a corporation Rand conducted the business in such a manner that its corporate entity should be disregarded and Rand held individually responsible for the corporation's debt to the shopping center.

Rand subsequently filed a motion for summary judgment which was granted by the court and from which Fausett brings this appeal.

Fausett points out the familiar rules of law pertaining to motions for summary judgment: Summary judgment

should be allowed only when it is clear there is no issue of fact to be litigated; the burden is upon the moving party to demonstrate that there is no genuine issue of material fact; and even if the facts are not in dispute, if reasonable minds might differ as to conclusions to be drawn from those facts, summary judgment may not be entered. *Robinson* v. *Rebsamen Ford, Inc.*, 258 Ark. 935, 530 S.W. 2d 660 (1975); *Brown* v. *Aquilino*, 271 Ark. 273, 608 S.W. 2d 35 (Ark. App. 1980).

It is Fausett's argument that there are genuine issues of fact as to whether Rand agreed to the deduction of the amount owed by Phase II from his partnership distribution and as to whether Rand should be individually responsible for the obligations of Phase II on the basis that there should be a disregard of the corporate entity of Phase II.

In deciding the motion for summary judgment the trial court had before it in addition to the pleadings, answers to interrogatories, answers to requests for production of documents, responses to requests for admissions, affidavits, depositions, and many exhibits attached to the affidavits and introduced as part of the depositions. From these matters, the evidence with regard to Fausett's contention that Rand agreed to the deduction of the amount owed by Phase II, can be summarized as follows:

Edward K. Willis, president of Fausett Company, testified in a deposition taken May 29, 1980, that there was a sale under consideration in 1978. At that time he talked with Rand and they agreed that if the sale could be closed at the price that was in the offer, the sellers would guarantee the rents and other expenses owed by Phase II. The resolution of the financial matters involved would be accomplished by the deduction of an amount equal to approximately $8,000.00 from Rand's proceeds. That was a negotiated amount and represented roughly half of the money owed by Phase II at that time. That sale did not go through, but the shopping center was subsequently sold to a different buyer under an almost identical set of circumstances. Willis testified that when this subsequent sale was being negotiated he talked to Rand and the terms for the previous sale were still agreeable

as to the money owed by Phase II. After the sale was closed in October or November of 1979, he talked to Rand over the telephone about the final distribution of the proceeds due him from the sale. He said Rand told him to put it in a letter and a letter from Willis to Rand was made an exhibit to the deposition. The letter said that pursuant to their telephone conversation of that day Rand's share of the distribution from the sale of the shopping center was $33,600.00 less delinquent rents due by Phase II in the amount of $7,621.88, delinquent common area maintenance fees of $40.00, and delinquent merchants' association dues of $603.75, all of which totaled $8,265.63, leaving a net amount due to Rand of $25,334.37.

Willis further testified in his deposition that Rand was entitled to $25,334.37 but he did not get it because he did not sign the letter of December 3, 1979, which says in the final paragraph: "By our respective signatures, we are releasing any and all claims we have or may have in connection with the Galleria partnership or your lease with the Galleria Shopping Park." Willis said the letter was mailed to Rand because Willis wanted Rand's signature to acknowledge that the mathematical computations were correct.

In an affidavit attached to Rand's motion for summary judgment he admitted receiving the letter of December 3, 1979, but said the $8,265.63 was not his obligation but the obligation of Phase II.

We think the above evidence presents a genuine issue of fact. Rand contends the Statute of Frauds, Ark. Stat. Ann. § 38-101 (Repl. 1962), applies to any agreement to deduct Phase II's obligations from his share of the proceeds of the sale. It is our view, however, that the issue presented by the evidence is whether there was a new and original undertaking by Rand. Such an undertaking would not come within the provisions of the Statute of Frauds and since it would result in the sale of the shopping center there would be consideration to both Rand and Fausett. Rand would get his portion of the selling price but would give up the amount deducted. Fausett would receive the real estate agent's commission but according to the evidence would

have to advance the amount owed by Phase II so the sale could be closed.

In *Tyson* v. *Horsley*, 141 Ark. 545, 217 S.W. 776 (1920), there was testimony that Tyson had a claim on the land of John Elby for the payment of Elby's debt to him and that Horsley promised if Tyson would release his claim and allow Horsley to sell Elby's land, Horsley would pay Tyson the amount Elby owed him. Acting upon this agreement, Tyson released Elby and charged the account to Horsley. The court held that this evidence made an issue for the jury as to whether or not there was an original undertaking by Horsley upon a sufficient consideration to pay Tyson the debt due him by John Elby, and said:

> In *Jonesboro Hardware Co.* v. *Western Tie & Timber Co.*, 134 Ark. 543, we said: "We have several times held that a parol promise to pay the debt of another is not within the statute of frauds when it arises from some new and original consideration of benefit or harm moving between the newly contracting parties. We have also held that a waiver of legal right is a sufficient consideration to support a promise to pay the debt of another."

See also *Brown* v. *Morrow*, 124 Ark. 480, 187 S.W. 449 (1916) and *Frame* v. *Whittam*, 181 Ark. 768, 27 S.W. 2d 990 (1930).

We find, therefore, that the summary judgment should be reversed and the case remanded for a trial on the issue above discussed but we do not find that there is an issue to be litigated as to whether the corporate entity of Phase II should be disregarded and Rand held individually responsible for its obligations.

In that regard there is evidence in the record that Shelly Rand's, Inc. is a sixteen year old corporation with two shareholders. Sheldon Rand owns ninety-seven percent of the stock and his wife owns three percent. He is President. His wife is Secretary and Treasurer. There are no other officers or directors. The corporation owns and operates seven ladies' ready-to-wear stores in the Central Arkansas

area. Two of them operate under the name Lisa's Closet and the rest operate under the name Shelly Rand's.

Phase II is a separate corporation. Its correct legal name is Phase II, Inc. That was the name of the tenant in the shopping center lease. The trade name listed in the lease, however, was Shelly Rand's Phase II but the sign at the store and the advertising just said Phase II. In Rand's deposition he testified that Phase II was formed because it was a new type of business and he wanted to limit his own liability and the liability of the Shelly Rand corporation. Fausett's president, in his deposition, said he knew Phase II was a corporation but that Rand was a one-man show, operated several corporations, and operated them as he saw fit.

In its argument that the evidence presents a genuine issue of fact as to whether the corporate entity of Phase II should be disregarded and Rand held individually responsible for its obligations, Fausett cites three cases. *Black & White, Inc.* v. *Love*, 236 Ark. 529, 367 S.W. 2d 427 (1963); *Plant* v. *Cameron Feed Mills*, 228 Ark. 607, 309 S.W. 2d 312 (1958); and *Rounds & Porter Lumber Co.* v. *Burns*, 216 Ark. 288, 225 S.W. 2d 1 (1949). In each of these cases one corporation was held liable for the obligations of another corporation. Of course, our question here is whether there is a genuine issue of fact concerning the responsibility of Sheldon Rand — an individual — for the obligations of Phase II. We note, however, that each of the cited cases contains the statement: "It is only when the privilege of transacting business in a corporate form has been illegally abused to the injury of a third person that the corporate entity should be disregarded." That statement is in agreement with three cases cited by Rand which refused to hold a stockholder liable for the obligation of a corporation. In each of those cases the court held that such liability will be imposed only where the corporate structure has been illegally or fraudulently abused to the injury of a third person. *Banks* v.*Jones*, 239 Ark. 396, 390 S.W. 2d 108 (1965);*Parker, Inc.* v.*Point Ferry, Inc.*, 249 Ark. 764, 461 S.W. 2d 587 (1971); and *Thomas* v. *Southside Contractors, Inc.*, 260 Ark. 694, 543 S.W. 2d 917 (1976). For a general discussion, see 1

Fletcher, *Cyclopedia of the Law of Private Corporations*, § 41.3 (Supp. 1980).

We do not find any evidence that the corporate form of Phase II was illegally or fraudulently abused by Rand to any injury alleged by Fausett in this case. In the first place, the evidence in the record shows that Fausett is a corporation and that the corporation was one of the members of the partnership which originally owned the shopping center. But Fausett was not Phase II's landlord and Phase II has never owed Fausett any rent. Fausett is not here as a partner. Its president testified, "We're not suing Mr. Rand for back rent due, whether it's Phase II, him corporately or personally or whatever." And in the second place, Fausett — whether as one of the partners owning the shopping center or as the rental agent for the owners — knew that Phase II was a corporation. Fausett's president testified, "In my mind there is no question that we have a tenant that's Phase II, Inc., and that we're dealing with a corporation." Regardless of his testimony that Mr. Rand was a one-man show, the president of Fausett testified, "We should have required a personal endorsement. ... And it was a mistake, obviously now, not to have done that."

The case must be reversed for a trial on the first issue discussed. As the record stands there is no genuine issue of fact to be tried on the second issue discussed. Also, since Fausett admits Rand is entitled to $25,334.37 of the money it is holding from Rand's share of the distribution from the sale of the shopping center, there is no issue to be tried with regard to that amount. Under Rule 56(d) of the Rules of Civil Procedure if judgment is not rendered on a motion for summary judgment the court should "make an order specifying the facts that appear without substantial controversy" and upon trial "the facts so specified shall be deemed established." *Young, Adm'r.* v. *Dodson*, 239 Ark. 143, 388 S.W. 2d 94 (1965); *Bonda's Veevoederfabriek, Etc.* v. *Provimi, Inc.*, 425 F. Supp. 1034 (1976).

Reversed and remanded for further proceedings consistent with this opinion.