Jesse R. WINCHEL, et al. *v.* Robert CRAIG

CA 95-998 934 S.W.2d 946

Court of Appeals of Arkansas
En Banc
Opinion delivered December 23, 1996

*Davis & Watson, P.A.,* by: *Jeff H. Watson,* for appellants.

*Everett, Shemin, Mars & Stills,* by: *David D. Stills,* for appellee.

MELVIN MAYFIELD, Judge. Appellants Jesse and Verda Winchel appeal from a judgment entered against them and Winchel Enterprises, Inc., jointly and severally, in the amount of $19,250, plus costs. The damages were assessed for an injury sustained by the appellee caused, in part, by Winchel Enterprises, Inc. The appellants were found liable under the doctrine of "piercing the corporate veil." On appeal the appellants argue only two points: (1) the trial court lacked subject-matter jurisdiction to decide the issue of piercing the corporate veil; and (2) the trial court erred in denying

their motion for judgment notwithstanding the verdict as there was no substantial evidence to support the jury's decision to pierce the corporate veil.

Robert Craig, who was employed by Mike Traylor to operate an apparatus, used to spread fertilizer, which was manufactured by Winchel Enterprises, Inc., was injured on April 16, 1992, when he stuck his hand into the sprocket and chain area of the spreader motor while it was operating. On December 17, 1992, Craig filed a complaint in circuit court against Traylor and Winchel Enterprises alleging strict liability, negligence, and breach of an implied warranty of merchantability.

In June 1993, the appellants resigned as officers of Winchel Enterprises and the corporation was officially dissolved by filing a certificate of dissolution in the office of the Secretary of State on December 7, 1993. Thereafter, on May 16, 1994, Craig filed a "Second Amended and Substituted Complaint" adding the appellants as defendants and asking for judgment jointly and severally against Traylor, Winchel Enterprises, and the appellants. The complaint alleged, among other things, that because the corporation was a sham corporation, because it was inadequately capitalized, and because of the way its business was transacted and its records were kept its corporate veil should be pierced.

After a trial held April 25 and 26, 1995, a jury returned a verdict on interrogatories. The jury found against Winchel Enterprises as to liability, that it was 55% at fault, and that the affairs of the corporation were conducted in such a manner that the corporate entity should be disregarded and the appellants held personally liable. On May 2, 1995, the trial court entered the judgment from which this appeal comes.

At trial, Jesse Winchel testified that he bought the spreader business in 1983; that they incorporated for the purpose of manufacturing spreaders; and that he and his wife were the sole incorporators, stockholders, and officers. They purchased inventory, which they eventually sold to the corporation, and equipment, which they leased to the corporation. The corporation paid them $3,000 per month for the equipment and they drew a salary. For a period of time, the corporation held annual meetings, kept records, paid corporate taxes, paid Arkansas franchise tax, and was in good standing with the state.

In January 1992, the appellant Jesse Winchel stopped drawing wages because the company was in bad financial straits and could not afford to pay him. Between 1990 and 1993 he loaned money to the corporation in an attempt to keep it afloat. He testified that he always made a promissory note to himself when he loaned the company money, and the company paid some of the notes. He said the company had no assets and could not afford liability insurance. Winchel testified further that when the lawsuit was filed against Winchel Enterprises on December 13, 1992, he had already taken steps to close down the company; that they should have closed down two years previously, but they were trying to make it work. He said that they did not provide for any payment to Craig because they did not know at that time that they had any liability to him. At liquidation the company had assets of some $12,000 in the form of a forklift which was sold and the proceeds went to pay off the bank indebtedness on the forklift. Appellants received no assets at dissolution.

On May 20, 1993, appellants formed a new corporation, Shamrock Spreaders, Inc. Although the Articles of Incorporation stated that the purpose of this new corporation was to manufacture spreader beds, Winchel testified that it could not manufacture the beds because it had no equipment, and the corporation never went into business.

Dan Downing, appellants' accountant, testified that his accounting firm had done the bookkeeping for Winchel Enterprises since 1983 when appellants came to him for advice on how to operate the business they had acquired. Downing said his counsel was to incorporate primarily for income tax purposes. Downing said that the corporate structure had never been abused; that Winchel Enterprises was a solid entity from 1983 through liquidation; and that the corporate records were kept at his office. He testified that the company was bankrupt, had no operating funds, and its dissolution had nothing to do with Craig's lawsuit. Downing said the liquidation plan was a standard plan "taken right out of the Internal Revenue manuals," and the appellants received no money when the company was dissolved. However, he also testified that there was a transfer of assets upon liquidation, but he said the purpose was to clean up the books in order to file a final income tax return showing zero assets.

In regard to the Articles of Incorporation of Shamrock Spread-

ers, Inc., Downing testified that he assisted appellants in setting up the corporation; that it was never activated; that its purpose was to market parts and supplies; and that the Articles of Incorporation contained a clerical error regarding the manufacture of spreaders.

## I. *Circuit Court Jurisdiction*

On appeal, appellants first argue that piercing the corporate veil is an equitable remedy, and the circuit court lacked subject-matter jurisdiction to decide that issue.

Appellants contend chancery has exclusive jurisdiction in areas of substantive law developed by equity and cite *In re Long Trust* v. *Holk*, 315 Ark. 112, 864 S.W.2d 869 (1993), and *J.W. Reynolds Lumber Co.* v. *Smackover State Bank*, 310 Ark. 342, 836 S.W.2d 853 (1992), in support of this argument. However, the exclusive jurisdiction in those cases involved trusts, and the construction, interpretation, and operation of trusts are matters within the jurisdiction of the courts of equity, *Holk, supra*, and courts of equity have inherent and exclusive jurisdiction of all kinds of trusts and trustees, *Spradling* v. *Spradling*, 101 Ark. 451, 142 S.W. 848 (1911).

Appellants also cite *Cummings* v. *Fingers*, 296 Ark. 276, 753 S.W.2d 865 (1988). But, the equitable jurisdiction in that case was based upon a statute, that authorized an action "by equitable proceedings" to be filed in aid of execution for the discovery of assets that could be subjected to payment of the judgment on which the execution was issued. The court held that the appellees had "instituted this action to satisfy their judgment through a remedy which, under the circumstances presented, required an equitable proceeding as authorized under [the statute]." 296 Ark. at 281, 753 S.W.2d at 868. And the court remanded for the circuit court to transfer the cause to chancery court. The instant case, however, was not brought in aid of execution and the statute involved in *Cummings* is not involved in the case at bar.

In *Bates* v. *Bates*, 303 Ark. 89, 793 S.W.2d 788 (1990), our supreme court discussed the issue of jurisdiction. The court said this must be assessed within the "narrow confines of equity jurisdiction under the Constitution of Arkansas." It explained:

> Article 7, section 11 provides: "The circuit court shall have jurisdiction in all civil and criminal cases the exclusive jurisdiction of which may not be vested in some other court

provided for by this Constitution." This provision means that unless a cause of action is confided by the Constitution exclusively to another court, it belongs exclusively, or concurrently, to the circuit court. In other words "[a]ll unassigned jurisdiction under the Constitution is vested in the circuit court. . . ." Article 7, section 15, provides: "until the General Assembly shall deem it expedient to establish courts of chancery the circuit court shall have jurisdiction in matters of equity, subject to appeal to the Supreme Court, in such manner as may be prescribed by law." By Act 166 of 1903, Ark. Code Ann. § 16-13-301 (1987), separate courts of chancery were established by the General Assembly. However, the General Assembly is without authority to give chancery courts any jurisdiction other than that which the equity courts could exercise at the time of the adoption of the Constitution of 1874.

303 Ark. at 91, 793 S.W.2d at 790 (citations omitted).

■ And, in *Pinckney v. Mass Merchandisers, Inc.*, 16 Ark. App. 151, 698 S.W.2d 310 (1985), the appellants argued the circuit court lacked subject-matter jurisdiction because the complaint sought injunctive relief and an accounting. We said:

Under the Arkansas Constitution, circuit courts are the reservoir of unassigned judicial power; they have original jurisdiction in all cases where jurisdiction is not expressly vested in another court. The correct way to determine the circuit court's jurisdiction is to first determine what class of cases are expressly entrusted to the jurisdiction of other tribunals, with the great residuum belonging concurrently or exclusively to the circuit court. In order to successfully attack the circuit court's jurisdiction, it must be shown that another court has been granted exclusive jurisdiction of the subject matter.

16 Ark. App. at 153-54, 698 S.W.2d at 312 (citations omitted).

Here, appellant has not shown that chancery court has been granted exclusive jurisdiction in matters regarding piercing the corporate veil. To the contrary, our supreme court has indicated that "piercing the corporate veil" may be an issue in circuit court.

In *Black and White, Inc. v. Love*, 236 Ark. 529, 367 S.W.2d 427

(1963), an appeal from circuit court, the appellants appealed from the trial court's action in allowing certain testimony to be presented. Our supreme court found no error, and said that "the plaintiffs were making an effort to pierce the fiction of the corporate entities of Black & White, Inc., and Checker Cab Company; and that the way the two corporations operated — like a joint venture — was a cogent fact which the plaintiffs were entitled to show." The appellants also objected to an instruction given by the trial court. Our supreme court found no error regardless of whether the instruction complained of was given on the theory of joint venture or the theory of piercing the corporate veil. The supreme court held that the giving of the instruction was justified and found "no error in the entire case."

 Therefore, we cannot agree that the circuit court was without jurisdiction to decide the issue of piercing the corporate veil.

## II. *Substantial Evidence*

Appellants also argue that the trial court erred in denying their motion for judgment notwithstanding the verdict because there was no substantial evidence to support the jury's decision to pierce the corporate veil.

By jury verdict, returned upon interrogatories, the jury found "from a preponderance of the evidence that the corporate affairs of Winchel Enterprises, Inc., were conducted in such a manner that the corporate entity should be disregarded so as to render Jesse R. Winchel and Verda Winchel personally liable for Robert Craig's damages." The trial court subsequently denied appellants' motion for judgment notwithstanding the verdict on the basis that the jury was correctly instructed on the issue of piercing the corporate veil, and there was substantial evidence to support the jury's verdict in that regard. In the court's letter decision, the court said there was also substantial evidence to support a finding that Arkansas law was violated when the shareholders took no steps to provide for the contingent liability resulting from the filing of the suit for personal injuries against the corporation and which was pending at the time of its dissolution. Moreover, the court said, evidence regarding the formation of the new corporation, Shamrock Spreaders, Inc., constituted substantial circumstantial evidence concerning the intentions and motives of the shareholders.

■ On appeal, the appellate court will uphold the trial court's denial of a motion for judgment n.o.v. if there is any substantial evidence to support the jury's verdict. *Arkansas Power and Light Co. v. Adcock*, 281 Ark. 104, 661 S.W.2d 392 (1983). Substantial evidence is evidence that is of sufficient certainty and precision to compel a conclusion one way or another, forcing or inducing the mind to pass beyond suspicion or conjecture. *Croom v. Younts*, 323 Ark. 95, 913 S.W.2d 283 (1996).

■ Appellants argue that there was no evidence of illegal or fraudulent abuse of the corporate form; no evidence that the dissolution of the corporation came about because of the filing of the appellee's personal injury lawsuit; no evidence that the corporation was undercapitalized; and no evidence that a new corporation was formed with the intention of avoiding the liability of the old one. We do not agree. The appellants' problem is that the jury did not accept the appellants' explanation of the evidence, but the weight and value of the evidence lies within the exclusive province of the jury. *Garrett v. Brown*, 319 Ark. 662, 666, 893 S.W.2d 784, 787.

■ As to the law, in *Humphries v. Bray*, 271 Ark. 962, 611 S.W.2d 791 (1981), the Workers' Compensation Commission had combined all the employees who worked at the appellant's separate businesses to hold that the appellant had enough employees to be subject to the workers' compensation law. When the appeal of the holding reached our supreme court, it said the issue was whether there was substantial evidence to find that a corporation was the alter ego of the appellant, and that it was so managed and controlled by him as to constitute a sole proprietorship. The court stated that the conditions under which the corporate entity may be disregarded or looked upon as the alter ego of the principal stockholder vary according to the circumstances of each case.

In *Fausett Co. v. Rand*, 2 Ark. App. 216, 619 S.W.2d 683 (1981), this court considered the issue of piercing the corporation veil and said that all three cases cited by one party contained the statement: "It is only when the privilege of transacting business in a corporate form has been illegality abused to the injury of a third person that the corporate entity should be disregarded." And we said that all three cases cited by the other party held that such liability will be imposed only where the corporate structure has been illegally or fraudulently abused to the injury of a third person. All six cases are listed in the *Fausett Co. v. Rand* opinion. *See* 2 Ark.

App. at 221, 619 S.W.2d at 686.

In *Arkansas Bank & Trust Co.* v. *Douglass*, 318 Ark. 457, 885 S.W.2d 863 (1994), our supreme court held that the insurance commissioner did not err in piercing the corporate veil. Although that case involved a parent corporation and its subsidiaries, the principle is the same. In that case, our supreme court discussed the case of *Woodyard* v. *Arkansas Diversified Ins. Co.*, 268 Ark. 94, 594 S.W.2d 13 (1980), a case in which our supreme court held that courts will ignore the corporate form of a subsidiary where "fairness" demands, and said that this is usually where it is necessary to prevent wrongdoing and where the subsidiary is the mere tool of the parent.

In the instant case, one of the jury instructions said:

You are instructed that under Arkansas law, after dissolution and after paying for or adequately providing for the payment of its liabilities, the corporation, if authorized at a meeting of shareholders, may sell its remaining assets and distribute the same among the shareholders according to their respective shares.

The instruction is taken directly out of the Arkansas Business Corporation Act, specifically Ark. Code Ann. § 4-26-1103 (Repl. 1991), which provides that after dissolution:

(3) After paying or adequately providing for the payment of its liabilities:

(A)(i) The corporation, if authorized at a meeting of shareholders which is to be held on notice to all shareholders, whether or not entitled to vote, by a vote of a majority of all outstanding shares entitled to vote thereon, may sell its remaining assets or any part thereof for cash or for shares, bonds, or other securities of another corporation, or partly for cash and partly for such securities, and distribute the same among the shareholders according to their respective rights.

In the instant case, there is evidence that the appellee was injured by a spreader manufactured by the corporation Winchel Enterprises; that appellants were its sole incorporators, stockholders, and officers; that the corporation had no liability insurance in case someone was hurt by its equipment; that the appellants dis-

solved Winchel Enterprises and sold or transferred its assets subsequent to appellee filing suit against the corporation; that about a month before the appellants resigned as officers of Winchel Enterprises, they formed a new corporation whose Articles of Incorporation stated that the purpose of the new corporation was to manufacture spreader beds — and this is the same kind of equipment that was manufactured by the first corporation; and that appellants made no provision upon dissolution of the old corporation to provide for payment of any liability it might have to appellee as a result of this suit which was pending at that time.

■ Judgment notwithstanding the verdict is proper only where there is no substantial evidence for the jury verdict and one party is entitled to judgment as a matter of law. *Findley* v. *Time Insurance Co.*, 269 Ark. 257, 599 S.W.2d 736 (1980). There is substantial evidence to support the jury verdict, and we affirm the judgment of the circuit court.

ROBBINS, STROUD, NEAL, and GRIFFEN, JJ., agree.

ROGERS, J., dissents.

JUDITH ROGERS, Judge, dissenting. I am in agreement with appellant's argument that the circuit court lacked jurisdiction to afford equitable relief. Therefore, I respectfully dissent to the majority's decision rejecting appellant's argument.

The issue of which court, law or equity, has jurisdiction to grant the relief known as "piercing the corporate veil" is one of first impression. The majority relies, in part, on the decision of *Black and White, Inc.* v. *Love*, 236 Ark. 529, 367 S.W.2d 427 (1963), where the supreme court, upon review of a circuit court case, found no error in the admission of evidence or an instruction touching upon the issue of piercing the corporate entity. Although the court found "no error in the entire case," that finding is not equivalent to a ruling that jurisdiction in circuit court was proper. That issue was simply not raised or even remotely discussed by the court, just as the propriety of the circuit courts' transfer of the issue of piercing the corporate veil to equity was not at issue in the cases of *Parker* v. *Point Ferry*, 249 Ark. 764, 461 S.W.2d 587 (1971), and *Banks* v. *Jones*, 239 Ark. 396, 340 S.W.2d 108 (1965). Consequently, neither the decisions in *Black and White, Inc.*, *Parker*, nor *Banks* can be relied upon as controlling authority on the issue of jurisdiction. The question is decidedly one of first impression, although it is not one

for which there is no guidance.

The majority does not deny that piercing the corporate veil is a remedy that is equitable in nature. Indeed, in *Farmers Gulf Station v. Bray*, 271 Ark. 962, 611 S.W.2d 791 (Ark. App. 1981), this court observed that the doctrine of piercing the corporate veil is founded in equity. As observed by the majority, it is a doctrine that is applied to prevent injustice and it is one that is to be applied with great caution. Additionally, the doctrine of piercing the corporate veil is recognized as being an equitable *remedy*, not a cause of action unto itself, which is used as a means of imposing liability. *See* 1 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations*, § 41 (1990). With this distinction in mind, the supreme court's decision in *Cummings v. Fingers*, 296 Ark. 276, 753 S.W.2d 865 (1988), provides the answer to the question of whether a circuit court has jurisdiction to grant equitable relief, and that answer is in the negative.

In *Cummings v. Fingers, id.*, the appellees sought to obtain satisfaction of a judgment rendered in their favor in circuit court by petitioning the court to compel the appellant to obtain and deposit into the court's registry funds appellant was entitled to receive, but which were being held by a government agency. Although the trial judge had recognized that the type of order sought by appellees was cognizable in equity, the judge ruled that he had the inherent authority to compel the appellant to act. The supreme court disagreed, holding in no uncertain terms that the circuit court lacked jurisdiction to grant what amounted to equitable relief. The majority here dismisses the appellant's reliance on *Cummings* by stating that the case was decided on the basis of a statute. However, I do not believe that the holding of the court in *Cummings* can be distinguished with such facility. It is clear from the opinion that the focus of the decision was on the compulsory aspect of the type of relief afforded by the statute, which was said to be equitable in nature. By this decision, the court clearly took the position that circuit courts do not have the power to afford equitable relief, as demonstrated by its rejection of the dissenting viewpoint. *See, id.*, 296 Ark. at 280, n.2. In sum, the supreme court did hold that circuit courts do not have jurisdiction to enforce their judgments by means of an equitable remedy. In other words, it was held that jurisdiction lies exclusively in chancery court. *See also Monette Road Improvement Dist. v. Dudley*, 144 Ark. 169, 222 S.W. 59 (1920)

(where the supreme court held that the creation of chancery courts in this state left no vestige of equity jurisdiction in the circuit courts), and *Commission on Judicial Discipline and Disability* v. *Digby*, 303 Ark. 24, 29, 792 S.W.2d 594 (1990) (where the supreme court stated matter of factly that injunctive relief is a remedy exclusively cognizable in equity).

The parallels between the instant case and the decision in *Cummings* v. *Fingers*, *supra*, are striking, and I am at a loss to conceive of any reason why the majority finds no application of the holding in *Cummings* to this case. As in *Cummings*, the appellee here is seeking to enforce its judgment, in an effort to impose individual liability, by means of an equitable remedy. As did the court in *Cummings*, we should hold that the circuit court had no jurisdiction to grant equitable relief and reverse and remand with directions to transfer the matter to chancery court. Until the distinction between equity and law courts is abolished in this state, I feel constrained to not blur this separation.