967 A.2d 827

## SKANSKA USA BUILDING, INC.

v.

## SMITH MANAGEMENT CONSTRUCTION, INC., et al.

No. 221, Sept. Term, 2008.

Court of Special Appeals of Maryland.

March 10, 2009.

Z. Taylor Schutlz (Steven J. Kmieciak, John T. Bergin, Seyfarth Shaw LLP, on the brief), Washington, DC, for Appellant.

Anthony L. Meagher (Robert J. Mathias, Emily T. Wright, DLA Piper LLP, on the brief; Baltimore), Benjamin D. Wood (Robert S. Brams, Patton Boggs, LLP, on the brief; Washington, DC), for Appellee.

Panel: HOLLANDER, JAMES R. EYLER and JAMES A. KENNEY, III (Ret., specially assigned), JJ.

JAMES R. EYLER, Judge.

This case turns on the interpretation of dispute resolution provisions in a subcontract relating to federal procurement. The contract relates to the construction of a biomedical re-

search facility ("the project"), on property owned by FSK Land Corporation ("FSK"), located on the Johns Hopkins University Bayview campus, and leased to the National Institutes of Health of the federal Department of Health and Human Services. ("NIH"). On December 31, 2001, FSK entered into a contract, entitled the Development Management Services Agreement ("DMSA"), with Smith Management Construction, Inc. ("SMCI"), an appellee, pursuant to which SMCI agreed to serve as "Development Manager" for the project. BRC Lease Co., LLC ("BRC"), another appellee, was formed for the sole purpose of entering into a long term lease with NIH. FSK assigned its interests under the lease and the DMSA to BRC.

On May 20, 2004, SMCI entered into a contract with Skanska USA Building, Inc. ("Skanksa"), appellant, pursuant to which appellant agreed to serve as construction manager for the project. The contract consisted of an "Agreement for Construction Services" ("the Agreement") and a "Supplement to the Agreement for Construction Services" ("Supplement") (collectively, "the Contract"). Section 7.6.1 of the Supplement expressly incorporated, along with other documents, the lease with NIH and the DMSA, expressly including the dispute resolution provisions contained in the DMSA.

Appellant asserts that, after it began work, SMCI made substantial changes in the project for which appellant was not adequately compensated. Ultimately, on August 30, 2007, appellant filed suit against appellees in the Circuit Court for Baltimore City.

SMCI and BRC filed motions to dismiss, asserting primarily that the court lacked subject matter jurisdiction. The circuit court, by order and memorandum opinion dated February 6, 2008, granted, without prejudice, SMCI's motion to dismiss, and by order dated March 14, 2008, granted, without prejudice, BRC's motion to dismiss, on the ground that the court lacked subject matter jurisdiction.

Appellant filed a motion to alter or amend judgment. The court denied it, and appellant noted this appeal.

The resolution of this case turns on the interpretation of the Contract and DMSA, specifically, the dispute resolution provisions. The issue is whether appellant is required to pursue its claims under the procedure applicable to federal procurement contracts, specifically, the Contract Disputes Act of 1978, as amended, 41 U.S.C. §§ 601–613 and Federal Acquisition Regulation ("FAR") § 52.233–1,[1] or whether appellant can proceed in this civil action. The circuit court held that the court lacked subject matter jurisdiction, directed the parties to proceed under the Contract Disputes Act, and dismissed the complaint without prejudice.

We agree with the circuit court that appellant may not pursue its claims in this action at this time, but conclude that the court erred in dismissing the complaint. We shall vacate the orders dismissing the complaint and remand the case to circuit court with the direction that the circuit court enter an order staying any further proceedings on the merits pending the completion of proceedings under the Contract Disputes Act.[2] We see no need to address the remaining contentions of the parties.

### Background

In its complaint, appellant alleged that, pursuant to the Contract, it was to be paid costs plus a fee, the total not to exceed the guaranteed maximum price ("GMP") in the amount of $168,276,652.00, as adjusted by various events, including

---

1. The statute and regulations set forth the procedure that must be used by a contractor in pursuing a dispute with the federal government. *See* Discussion section, *infra.*

    The Federal Acquisition Regulations are contained in Title 48, chapter 1 of the Code of Federal Regulations. Nevertheless, the method of citation recognized within the field of government contracts is FAR followed by a section number. *U.S. v. Kasler Electric Co., Inc.,* 123 F.3d 341, 344 n. 5 (6 th Cir.1997).

2. In circuit court, SMCI asserted that venue was improper in Baltimore City, even for claims, if any, not governed by the Contract Disputes Act. In the event the parties desire to pursue improper venue within the State courts while the action is stayed, the direction to stay will not apply to that issue because the stay will be limited to proceedings on the merits.

approved changes in the work. The adjusted figure was designated the "Contract Sum." Changes in the project were reflected by "construction change directives" ("CCDs"), and "change orders" ("CO"). Appellant alleged that it complied with CCDs and CCs but did not receive a time extension or increase in the Contract Sum. Appellant alleged 20 specific instances in which SMCI breached the Contract and engaged in grossly negligent and intentional conduct.

Appellant included counts for breach of contract, breach of fiduciary duty, promissory estoppel/detrimental reliance, quantum meruit, and unjust enrichment against SMCI. Appellant expressly alleged that all non-contract counts were pled as alternatives to the contract count. Appellant also included counts for quantum meruit and unjust enrichment against BRC. Appellant requested monetary damages, interest, costs, attorney's fees, and an extension of the completion date under the Contract through the date of actual substantial completion. The Contract, a CCD log, and pending COs were filed as exhibits to the complaint and incorporated therein.

The Agreement provides that SMCI serves in the capacity of "owner" of the project but recognizes that it is not the true owner, reciting that FSK/BRC is the owner and lessor and NIH is the lessee. The Agreement further provides that SMCI serves as the contractor, responsible for all construction services necessary to fulfill SMCI's obligations under the DMSA. Section 7.6.1 of the Supplement provides, in part: "For disputes involving NIH or Lessor [BRC], Contractor [SMCI] shall adhere to the dispute resolution provisions contained in the DMSA."

Section 10.2 of the DMSA provides, in pertinent part:

10.2 *Disputes.* All claims, disputes or other matters in controversy between Lessor [3] and Development Manager [4] relating to or arising out of the performance of this Agreement and the Project ("Disputes") and not resolved pursu-

---

3. BRC.

4. SMCI.

ant to the ADR Procedures shall be resolved in accordance with the provisions of this Section 10.2.

(a) *Disputes Involving NIH.* Disputes for which Lessor or Development Manager contend that the NIH may be responsible (the "Government Disputes") shall be resolved pursuant to the Disputes Clause, FAR [Federal Acquisition Regulations] § 52.233–1. Both Lessor and Development Manager agree to cooperate in the presentation and prosecution or defense of Government Disputes. If Development Manager requests an extension of time or additional compensation and alleges that the event causing the delay or additional compensation is the responsibility of the Government, then Lessor will cooperate with and assist Development Manager in timely presenting a request for an extension of time or additional compensation to the Government, including sponsoring a claim against the Government. Such assistance may include, with Lessor's consent (which consent shall not be unreasonably withheld) and to the extent permitted by applicable law, permitting Development Manager to present and negotiate the proposal directly with NIH. In the event that the proposal for adjustment fails to result in a satisfactory resolution or Lessor does not consent to Development Manager's direct negotiation with NIH, Lessor shall sponsor a claim by Development Manager for the relief denied in the proposal for adjustment. Sponsoring a claim shall mean that Lessor shall permit Development Manager to bring a claim in Lessor's name, pursue it in Lessor's name through the full appeals process permitted by the Contract Disputes Act of 1978, as amended, 41 U.S.C. §§ 601–613, and to the extent (in Lessor's sole discretion) such claim does not otherwise affect Lessor or Development Manager, Development Manager shall be solely responsible for presenting and directing the course of proceedings (including consideration of settlement). To the extent deemed possible by Lessor in its sole discretion, the proposals for adjustment and claims sponsored by Lessor for Development Manager shall be presented separately from any other claims presented to NIH by Lessor. In the

event Lessor fails to cooperate with the Development Manager in presenting a claim to the Government, then Development Manager shall have the right to proceed with such claim against the Government in the name of the Lessor to the extent permitted by law.

\* \* \*

3. Development Manager and Lessor agree to stay the prosecution of any claim, including without limitation any claim against the performance or payment bond, they may have relating to this Project and to waive the benefit of the continued running of any applicable statute of limitation during the period of such stay so long as the claim relates in whole or in part to a claim being asserted against the Government by Lessor and Lessor is presenting Development Manager's claim diligently and in good faith. Development Manager and Lessor agree to the issuance of a stay order by a court having jurisdiction to effectuate the intent of this subparagraph. If the Government is found to be at fault, Development Manager agrees to accept the monetary and temporal relief awarded for its claims in full satisfaction of those claims following appeal, or expiration of the time for appeal. Development Manager will cause all its subconsultant contracts to contain a provision binding its subconsultants to stay any claims and accept resolution of those claims in accordance with Section 10.2.

(b) *Disputes Not Involving NIH.* All disputes other than Government Disputes shall, after Section 10.1 ADR Procedures have been utilized and have failed to resolve the matter, be resolved in accordance with this Paragraph 10.2.2 ("Non–Government Disputes"). All Non–Government Disputes shall be resolved by litigation in a court of competent jurisdiction in the State of Maryland. Each party shall bear its own costs and expenses in connection with Non–Government Disputes.

On October 25, 2007, SMCI filed a motion to dismiss the complaint. SMCI contended that disputes, including those for which SMCI or BRC contend that NIH may be responsible, had to proceed as pass-through claims pursuant to the dispute resolution provisions,[5] the Contracts Disputes Act, and implementing regulations. Accordingly, according to SMCI, the circuit court lacked subject matter jurisdiction and/or venue. SMCI also contended that appellant failed to state a claim upon which relief can be granted because appellant failed to comply with the Contract's mandatory dispute resolution provisions; failed to exhaust administrative remedies under the Contract Disputes Act; failed to join NIH, a necessary party; failed to adhere to the Contract's forum selection; and finally, that the breach of fiduciary duty count and the quasi-contractual counts failed to contain legally cognizable causes of action. SMCI attached the DMSA, an affidavit by a vice president of SMCI, and various letters as exhibits to its motion.

On October 24, 2007, BRC filed a motion to dismiss or, in the alternative, for summary judgment. In essence, BRC made the same contentions as SMCI with respect to the dispute resolution provisions and also contended the quasi-contract claims were barred as a matter of law. BRC attached the DMSA, an amendment to the DMSA dated May 20, 2004, and an affidavit by the president of BRC as exhibits to its motion.

Appellant filed an opposition to each motion and attached a supplemental affidavit and letters. SMCI filed a reply and attached a supplemental affidavit and letters.

By order and memorandum opinion dated February 6, 2008, the court granted SMCI's motion and dismissed appellant's complaint without prejudice on the ground that the Contract

5. As discussed more fully below, the pass-through (or sponsorship) claims procedure in the Contract is commonly used to avoid the defense of lack of contractual privity between a government agency and a subcontractor and because the Contract Disputes Act prohibits, or may prohibit, a direct action against the government by the subcontractor. The question whether the Contracts Disputes Act prohibits all direct actions by a subcontractor against the government is not before us.

Disputes Act preempted subject matter jurisdiction. The court explained:

> The contract between Skanska [appellant] and SMCI expressly incorporates the DMSA which provides that any dispute for which SMCI contends NIH may be responsible shall be resolved pursuant to the Federal Acquisition Regulation, which requires that resolution of disputes under the CDA [6] and with exclusive jurisdiction in the United States Court of Federal Claims or the relevant Federal agency Board of Contract Appeals.
>
> Therefore, under the plain language of the parties governing agreement, SMCI need only *contend* that NIH *may* be responsible to place this dispute within the purview of the CDA. Although the court finds that language overly broad, this court finds that § 10.2(a) of the DMSA nevertheless controls the issue associated with the extant motions.
>
> This court does not find merit in Skanska's [appellant's] argument that a "certified" claim must be submitted in order for the claim to be characterized as a "government dispute." If the parties intended to define a "government dispute" as those for which a "certified" claim has been submitted to NIH, the DMSA or other document would have expressly included that requirement.
>
> Accordingly, this court finds that the CDA preempts subject matter jurisdiction in this court. In that context, the plain language of the DMSA compels a finding that SMCI's contention that NIH may be responsible is sufficient to find that subject matter jurisdiction does not properly vest in this court. As a result, SMCI's motion to dismiss is hereby granted without prejudice, and the parties are directed to proceed under the Contract Disputes Act, 41 U.S.C. §§ 601–613, and its implementing regulations, Federal Acquisition Regulation § 52.233–1.

On February 25, 2008, appellant filed a motion to alter or amend the judgment, reasserting its earlier position, and

---

6. Contract Disputes Act.

emphasizing that, absent a revision in the court's opinion relating to the interpretation of the relevant documents, the action should be stayed and not dismissed.

On March 14, 2008, the court granted BRC's motion and dismissed appellant's complaint as to it "[f]or the reasons stated in this Court's opinion dated February 6, 2008 . . ." and also denied appellant's motion to alter or amend. This appeal followed.

### Standard of Review

Ordinarily, when a motion to dismiss based on failure to state a claim is filed, and matters outside of the pleadings are attached to the motion and/or other pleadings in opposition to or in support of such a motion, the motion is converted to a motion for summary judgment. Maryland Rule 2–322(c). Nevertheless, with respect to failure to state a claim, it is clear that the circuit court based its ruling on the Contract and the DMSA, which were incorporated into the complaint, determined that they were unambiguous, and ruled as a matter of law. Thus, the court did not rely on matters outside of the complaint, and neither shall we. *See* Maryland Rule 2–303(d); *Samuels v. Tschechtelin*, 135 Md.App. 483, 521, 763 A.2d 209 (2000) (documents incorporated by reference in a complaint are part of the complaint).[7]

As we recently stated in *Zimmer–Rubert v. Board of Education of Baltimore County*, 179 Md.App. 589, 947 A.2d 135 (2008),

> in reviewing a motion to dismiss, 'we accept all well-pled facts in the complaint, and reasonable inferences drawn from them, in a light most favorable to the non-moving party.' *Converge Servs. Group, LLC v. Curran*, 383 Md. 462, 475, 860 A.2d 871 (2004). We will only find that dismissal was proper 'if the alleged facts and permissible inferences, so viewed, would, if proven, nonetheless fail to

---

7. Appellees' motions were also based on lack of subject matter jurisdiction, improper venue, and lack of a necessary party. We do not base our decision on these grounds.

afford relief to the plaintiff.' *Sprenger v. Public Serv. Comm'n of Maryland,* 400 Md. 1, 21, 926 A.2d 238 (2007). Thus, our task is confined to determining whether the trial court was legally correct in its decision to dismiss. *Id.* *Zimmer–Rubert,* 179 Md.App. at 593, 947 A.2d 135.

## Contentions

### *Appellant*

Appellant contends that the court erred in concluding that a Government Dispute existed, within the meaning of the Contract. Appellant argues the mere contention by appellees that NIH may be responsible is insufficient, and in order to have a Government Dispute, SMCI and BRC had to present a certified claim to the NIH contracting officer. Appellant points out that it sought damages caused by *SMCI's* negligent and intentional conduct and breach of contract, itemizing approximately 20 specific instances. Appellant's position is that what is required to constitute a Government Dispute under the Contract is the same as that required to invoke jurisdiction under the Contract Disputes Act, i.e., the filing of a certified claim. Appellant also observes that if a mere contention that NIH may be liable is sufficient to constitute a Government Dispute, it would render meaningless the provisions in the Contract permitting appellant to sue SMCI in Maryland courts with respect to disputes between the parties herein.

Appellant argues that this case is governed by §§ 7.6.3 and 7.8.1 of the Supplement. Section 7.6.3 provides that SMCI shall be liable for its own gross negligence, intentional misconduct and material breach of contract. Section 7.8.1 of the Supplement provides that, except as set forth in § 7.6.1, disputes between appellant and SMCI shall be subject to mediation and, if necessary, litigation. In the event of litigation, the section further provides that appellant and SMCI consent to jurisdiction and venue in the courts of Maryland.

Second, appellant contends that, even if a Government Dispute existed, the court erred in concluding that it did not have subject matter jurisdiction because (1) the Contract

Disputes Act does not extend to disputes between parties who do not have a contract with the federal government, and (2) parties cannot by contract change the scope of a court's subject matter jurisdiction. Appellant argues that BRC is the contractor under the Contract Disputes Act and, thus, is the only party that can assert a viable claim against the NIH.

Third, in the alternative, appellant contends that the court erred in dismissing the complaint rather than staying the action pending the outcome under the federal procurement procedures, thus enabling the court to resolve any remaining claims. Appellant explains that neither the Board of Contract Appeals nor the Court of Federal Claims will resolve any disputes between the parties that are independent of NIH's liability.

As to BRC, appellant contends that the court erred by basing its decision on the Contract because BRC is not a party to the Contract. Thus, according to appellant, BRC is not entitled to the benefits or defenses of the Contract.

Lastly, appellant contends the court erred in denying its motion to alter or amend judgment.

## SMCI

SMCI's position, in essence, is that the relevant documents are clear and unambiguous and because SMCI contends that NIH may be responsible for appellant's claims, the Government Dispute provisions apply. SMCI also observes that, in addition to the mere contention by SMCI that NIH may be liable for appellant's claims, the claims clearly fall within the realm of matters subject to NIH's control. SMCI points to the structure of the contractual arrangements, specifically the pass-through mechanism for handling government claims and the reasons for that mechanism. SMCI also points out, relying on several provisions in the documents, that NIH controlled all aspects of the design and construction of the project. Material changes were subject to NIH approval, including the contract price, consisting of costs plus SMCI's fee, any increase in the "guaranteed Maximum Price" ("GAP")

as defined in the Contract, and any changes in the project schedule, including dates of substantial and final completion. As to the provisions in the documents providing for judicial actions, i.e., DMSA, § 10.2(b), quoted above, SMCI argues that those provisions only apply to Government Disputes.

Next, SMCI contends that, prior to this litigation and in reference to other matters involving this project, appellant (1) utilized the pass-through federal forum procedures, (2) after the circuit court's ruling in this case, filed a certified claim to begin the federal forum process with respect to the claims asserted in this litigation, and (3) took a position in pending federal litigation [8] with respect to the applicability of the federal forum process that is inconsistent with the position taken in this case. Thus, according to SMCI, appellant is estopped from asserting the non-applicability of dispute resolution provisions requiring the parties to proceed administratively, at least initially, in a federal forum.

With respect to the remedy of dismissal, SMCI argues that appellant first requested a stay in its motion to alter or amend, and at oral argument in circuit court, expressly stated that it did not want a stay. SMCI points out that the court's ruling on the motion to alter or amend is reviewable on an abuse of discretion standard, and argues that the court did not abuse its discretion.

### BRC

BRC, observing that the claims against it are quasi-contractual in nature, contends that we can affirm for any lawful reason and that a subcontractor, such as appellant, cannot pursue quasi-contract claims against it because express contracts govern the relationships between the parties. Specifi-

---

**8.** One of appellant's subcontractors, Harmon, Inc., filed suit in the United States District Court for the District of Maryland against appellant's sureties, on a payment bond. *Harmon, Inc. v. Fidelity & Deposit Company of Maryland,* civil no. RDB08 CV 0478. The sureties took the position that the payment bond incorporated the DMSA and that the plaintiff's claim was subject to the dispute resolution procedures contained in the DMSA.

cally, the Contract governs as between appellant and SMCI, and the DMSA governs as between SMCI and BRC.

In addition, BRC adopts the contentions made by SMCI with respect to the existence of a Government Dispute and the requirement that it be pursued in a federal forum, pointing out provisions in the documents in addition to those relied on by SMCI, establishing the degree to which NIH controlled the project. BRC adds that it is a third party beneficiary of the Contract, primarily relying on a provision in Exhibit Q to the Agreement and, as third party beneficiary, is entitled to enforce the Contract. Exhibit Q is entitled "Consent and Agreement of [appellant]" and provides, *inter alia*, that appellant consents to the assignment by FSK to BRC of its interest in the Contract and acknowledges that FSK is a "direct third party beneficiary" of the Contract.[9]

Finally, BRC contends that, if this Court does not affirm the dismissal of the claims against BRC and, in addition, determines that the circuit court has subject matter jurisdiction, this Court should stay further proceedings pending the ultimate resolution of administrative proceedings in a federal forum.

## Discussion

The Contract Disputes Act, enacted in 1978 and effective as to government contracts entered into in early 1979 and thereafter, applies to contracts entered into by federal agencies to procure goods and services, including construction services. 41 U.S.C. § 602. A contractor is defined as a party to such a contract, other than the government itself. *Id.* at § 601(4). All claims by a contractor relating to a contract must be in writing and must be submitted to the appropriate contracting

---

**9.** We note, however, that paragraph 9 of the amendment to the DMSA provides: "Notwithstanding any provision to the contrary set forth in the [DMSA], [BRC] shall not be deemed to be [a] third party beneficiar[y] of the Architect's Agreement, Construction Management Agreement, Construction Contract, or any of the other Subcontracts into which the Development Manager has entered or will enter."

officer for a decision. *Id.* at § 605(a). If the claim is for more than $100,000, the contractor must certify that

the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable, and that the certifier is duly authorized to certify the claim on behalf on the contractor.

*Id.* at § 605(c)(1). A contractor may appeal an adverse ruling by the contracting officer to the appropriate board of contract appeals. *Id.* at 606. Subject to exceptions that are not relevant here, a contractor may, in lieu of appealing the decision of the contracting officer to a board, bring an action in the United States Court of Federal Claims. *Id.* at § 609.

Appellant observes that the Contract Disputes Act governs claims by a contractor against the government, and appellant's claim is against another non-governmental contracting party. Thus, appellant concludes that the circuit court did not lack subject matter jurisdiction. We agree with that argument, but only to the extent that nongovernmental claims are involved, and conclude that the Contract binds appellant to first pursue the federal remedy, over which the circuit court lacks subject matter jurisdiction.

Maryland follows the objective law of contracts. When faced with an issue of contract interpretation, the first question is whether the contract is ambiguous. *County Comm'rs for Carroll County v. Forty West Builders,* 178 Md.App. 328, 376–377, 941 A.2d 1181 (2008). That question is one of law. *Id.* If unambiguous, the court simply interprets the contract. *Id.* Words must be read in context. *Atlantic Contracting & Material Co. v. Ulico Cas. Co.,* 380 Md. 285, 301, 844 A.2d 460 (2004). If ambiguous, extrinsic evidence may be introduced to determine the intention of the parties. *Id.*

Our reading of the contract documents lead us to the conclusion that, with respect to the issues before us, the documents are clear and unambiguous and require appellant to pursue remedies under the Contract Disputes Act prior to

litigation in State court. We base this conclusion on the plain language, considering the documents as a whole.

Article 7 of the Supplement addresses "changes, claims and disputes." The Article indicates that changes in the work are reflected in "change orders" and "construction change directives," approved as required by the Contract. Changes initiated by appellant must be in accordance with subparagraph 7.3 of the Supplement and require a notice followed by a proposal. Subparagraph 7.5 and its subsections address changes in the GMP and project timeline. According to the Supplement, subparagraph 7.3.1, the procedures are mandatory and prohibit appellant from suing SMCI if appellant "has not adhered to the requirements contained in this Article 7." Pursuant to the Supplement, subparagraph 7.6, if appellant has a claim arising from the delay, act or omission of a party other than appellant or SMCI, appellant is entitled to relief from SMCI only to the extent SMCI is able to recover relief from the third party. Under that same subparagraph, NIH is expressly considered a third party. The Supplement, subparagraph 7.6.1, provides that "[f]or disputes involving NIH or [BRC]," appellant "shall adhere to the dispute resolution provisions" contained in the DMSA. According to subparagraph 7.8.1, except as set forth in subparagraph 7.6.1, disputes between appellant and SMCI shall be subject to mediation and, if necessary, litigation.

The DMSA, Article X, incorporated into the Contract, expressly provides a mechanism for the resolution of disputes. Subparagraph 10.1 sets forth mediation procedures. Subparagraph 10.2, quoted above, provides that disputes arising out of the Contract and not resolved by mediation shall be resolved in accordance with the subparagraph. Subparagraph 10.2(a) governs disputes involving NIH ("Government Disputes"), and subparagraph 10.2(b) governs disputes not involving NIH ("Non–Government Disputes"). Under subparagraph 10.2(a), Government Disputes are those for which BRC or SMCI "contend that the NIH may be responsible . . . ." Government Disputes shall be resolved pursuant to the Disputes Clause, FAR § 52.233–1.

NIH is not a party to the Contract, which is between appellant and SMCI, and not a party to the DMSA, which is between BRC and SMCI. Recognizing the legal difficulty resulting from the lack of contractual privity between a subcontractor and a federal agency, and the probable inability to bring a direct action against the agency under the Contract Disputes Act, the relevant documents contain pass-through or sponsorship provisions. Pursuant to Supplement, subparagraph 7.6.1, the claimant, appellant in the case before us, certifies a claim and submits it to SMCI. Pursuant to the same provision, SMCI sponsors the claim and submits it to BRC, and pursuant to DMSA, subparagraph 10.2(a), BRC sponsors the claim and submits it to NIH. Pursuant to DMSA, subparagraph 10.2, the parties agreed to cooperate in the presentation of Government Disputes, with BRC being the ultimate presenter. Because of problems associated with lack of privity and preemption by the Contract Disputes Act, the pass-through procedure is commonly utilized when federal government procurement contracts are involved. *See, e.g., Eastern Inc. v. Shelly's of Delaware, Inc.*, 721 F.Supp. 649, 651–652 (D.N.J.1989).

The first question is whether the claims come within the Government Dispute provisions. The parties, in their briefs, discuss the ability of parties to agree to alternative dispute resolution procedures and to agree to an appropriate forum. That is really not the issue, however. The parties do not dispute how Government Disputes and non-government disputes are to be handled. They disagree as to whether this is a Government Dispute and the procedure to be employed, given that disagreement.

█ First, under the plain language of the Contract, the claims come within the Government Dispute provisions because appellees asserted below that NIH may be responsible for the claims. Because there is no contention to the contrary, we assume that all of the parties before us are proceeding in good faith.

Second, consistent with appellees' contention that NIH may be responsible, we note that all of appellant's allegations relate to an increase in the Contract Sum and an extension of the project schedule, matters subject to control and approval by NIH. In its complaint, appellant seeks compensation under the terms of the Contract and an extension of time under the Contract, matters generally subject to NIH's control.

Ultimately, it may be determined that NIH is not responsible, in whole or in part, and that, due to its own conduct, SMCI is responsible for some of all of the claimed compensation and for appellant's need for an extension of time. Nevertheless, under the relevant documents, wherein appellant agreed to a dispute resolution procedure, that procedure must be employed in the first instance.

The second question is whether Maryland courts have subject matter jurisdiction. Maryland courts do not have subject matter jurisdiction and cannot adjudicate whether some, none, or all of the claims are claims for which NIH is responsible. That has to be adjudicated in a federal forum. Maryland courts do have jurisdiction over a dispute between private parties such as the parties herein, and Maryland courts can enforce their contractual undertakings, including an agreement as to remedies. Generally, unless otherwise unlawful, parties are free to contract as to their remedies in the event of a breach, *James Julian, Inc., v. State Highway Administration,* 63 Md.App. 74, 76, 492 A.2d 308 (1985), including the sequencing of remedies. *Id., passim. See Seal & Company, Incorporated v. A.S. McGaughan Company,* 907 F.2d 450, 454–455 (4th Cir.1990); *Norment Security Group, Inc. v. Travelers Casualty and Insurance Company,* 505 F.Supp.2d 97, 105 (D.D.C.2007). There is nothing in the Contract relating to the procedure to be employed that is unlawful.

Appellant relies heavily on *Riley Electric Co. v. American District Telegraph Co.,* 715 F.Supp. 813 (W.D.Ky.1989). That case, and other similar cases, are not on point, however. *Riley* involved a federal procurement contract. The subcon-

tract in question provided that a claim by the subcontractor against the contractor would be submitted to the federal agency contracting officer for resolution. The court did not enforce that provision, concluding that, in enacting the Contract Disputes Act, Congress did not intend agency contracting officers to decide non-governmental disputes between contractors. In other words, the court regarded the dispute as a non-governmental dispute. As we have seen, the parties in this case clearly understood and differentiated between governmental and non-governmental disputes. There is no contention in this case that a federal agency contracting officer should decide private disputes.

Because of our inability to determine the extent of liability of NIH, the underlying question before us is one of priority of remedy, i.e., must appellant proceed in the federal forum before it can proceed in the State forum. We have already determined how the parties answered that question. Looking at the Contract in context, the parties' agreement is reasonable. We appreciate that appellant may not be privy to what has transpired between SMCI, BRC, and NIH but it obviously has knowledge of the nature and extent of its claims, if not the identity of the responsible party. It can, therefore, certify its claims, and SMCI and BRC have an obligation to cooperate in the development and presentation of those claims.

The relationships of the participants in the project are pass-through relationships from subcontractors of appellant to SMCI to BRC to NIH. Pursuing claims against the government first is more likely to produce a just result because the extent of liability of the ultimate responsible party will be known. Such claims can only be pursued in a federal forum-not Maryland courts. If this case proceeds now, the government's liability is unknown and not susceptible to determination in this case. It would be very difficult, without knowing or being able to determine the government's position, the nature and extent of SMCI's liability. By proceeding in the federal forum first, if and when State proceedings are necessary, the degree to which the government is liable will be known, and the liability for any remaining claims can be

determined. At the very least, the federal proceedings will clarify the issues between the parties herein. This sequencing, to which the parties agreed, is least likely to produce inconsistent results.

Our inability to determine the extent of liability of NIH was anticipated by the parties. Consistent with the clear agreement of the parties, we shall direct the circuit court to stay further proceedings on the merits pending a final determination in a federal forum. The agreement to stay appears in subparagraph 10.2(a)3., and provides in pertinent part:

> [SMCI] and [BRC] agree to stay the prosecution of any claim ... they may have relating to this Project ... so long as the claim relates in whole or in part to a claim being asserted against the Government by [BRC] and [BRC] is presenting [SMCI's] claim diligently and in good faith.... [SMCI] will cause all its subconsultant contracts to contain a provision binding its subconsultants to stay any claims and accept resolution of those claims in accordance with Section 10.2.

With respect to a stay of this action, we do not read the transcript of the hearing in circuit court in the same manner as SMCI. The question of staying the action was discussed. Clearly, appellant wanted the action to proceed and did not want it either dismissed or stayed, but just as clearly, appellant never stated that the case should be dismissed if not permitted to proceed.

On January 28, 2009, appellees filed a motion requesting leave to correct and supplement the record with a stipulation signed by all parties. The stipulation provides that (1) on October 28, 2008, appellant submitted a certified claim to SMCI, (2) on December 11, 2008, SMCI certified appellant's claim to BRC, and (3) on January 12, 2009, BRC certified appellant's claim to NIH. We shall grant the motion.

**CONSENT MOTION FOR CORRECTION OF RECORD GRANTED. JUDGMENTS REVERSED. CASE RE-MANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY WITH THE DIRECTION TO ENTER AN ORDER**

STAYING FURTHER PROCEEDINGS ON THE MERITS
PENDING COMPLETION OF PROCEEDINGS UNDER
THE CONTRACT DISPUTES ACT. COSTS TO BE PAID
ONE–HALF BY APPELLANT, ONE–FOURTH BY SMCI,
AND ONE–FOURTH BY BRC.