**CONWAY COMMERCIAL WAREHOUSING, LLC,**
**Appellant**

v.

**FEDEX FREIGHT EAST,**
**INC., Appellee.**

No. CA 10–658.

Court of Appeals of Arkansas.

Jan. 26, 2011.

Ed Daniel IV, Little Rock, for appellant.

Constance G. Clark, Fayetteville, for appellee.

JOSEPHINE LINKER HART, Judge.

The Faulkner County Circuit Court ruled that appellant Conway Commercial Warehousing (CCW) breached a build-to-suit lease, and the court awarded CCW's tenant, appellee FedEx Freight East (FedEx), $189,861.60 in damages and $15,274.38 in attorney fees. CCW appeals and argues that the court erred in finding it liable for breach and in calculating the amount of damages. FedEx cross-appeals, claiming that the court should have awarded prejudgment interest and a greater amount of attorney fees. We affirm on direct appeal and affirm in part and reverse and remand in part on cross-appeal.

The parties signed a ten-year lease agreement on October 5, 2001, with FedEx to pay rent of $10,200 per month. The lease required CCW to construct, at its sole expense, a facility conforming to FedEx's specifications and project manual. CCW warranted that the construction would be performed in a good and workmanlike manner. Joe Thielke, who owned CCW, also owned the construction company that built the facility.

On September 4, 2002, the building was ready for move-in. Representatives of Fed-Ex and Thielke Construction performed a building inspection and compiled a five-page punch list of items that did not conform to the contract's specifications. The punch-list was in the form of a memorandum and was not signed by either party. FedEx provided the list to CCW and then moved into the building on September 7, 2002.

During the next few months, CCW repaired and completed many of the punch-list items. On February 2, 2003, FedEx notified CCW that several things remained unfinished, including the area's landscaping and drainage. CCW performed some work at the site then notified FedEx in April 2003 that the punch-list items were completed. Upon inspection, however, FedEx determined that considerable work remained to be done. As a result, FedEx contracted with Nabholz Construction Company to pay a maximum price of $165,426 to finish the job. FedEx notified CCW that it intended to complete and correct the conditions on the property and recover its costs from CCW, but CCW did not respond.

The construction project lasted through early 2004, at which time FedEx determined that Nabholz had completed and corrected the remaining punch-list items. During construction, FedEx made four progress payments to Nabholz totaling $158,218. FedEx notified CCW of its first progress payment and sought reimbursement, but, again, CCW did not respond.

On August 31, 2007, and by an amended complaint filed September 3, 2008, FedEx sued CCW for breach of the lease to recover $158,218 it had paid to Nabholz, plus a twenty-percent supervision fee, for a total of $189,861.60. FedEx also sought prejudgment interest and a reasonable attorney fee. CCW defended on the ground that FedEx had failed to comply with section 7.1 of the lease, which required a preoccupancy inspection and a signed inspection form. The court ruled, after a bench trial, that FedEx's noncompliance with section 7.1 did not bar its claim against CCW. Accordingly, the court ruled that CCW had breached the lease and owed FedEx $189,861.60. The court declined to award prejudgment interest to FedEx and granted FedEx $15,274.38 in attorney fees, which was half of the amount FedEx requested. Both parties appeal from the court's order.

## I. *Direct appeal*

CCW contends on direct appeal that the circuit court erred in finding it liable for breach of the lease because 1) FedEx committed the first breach when it failed to conduct a preoccupancy inspection in accordance with section 7.1 of the lease, and 2) FedEx waived its rights under the lease when it moved into the building without conducting a proper preoccupancy inspection.

In an appeal from a bench trial, we will not reverse the circuit court's findings of fact unless they are clearly erroneous. *City of Rockport v. City of Malvern*, 2010 Ark. 449, 374 S.W.3d 660. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, when considering all of the evidence, is left with the definite and firm conviction that a mistake has been committed. *Id.* A circuit court's conclusion of law is given no deference on appeal. *Ward v. Doss*, 361 Ark. 153, 205 S.W.3d 767 (2005).

We first address CCW's argument that FedEx was the first to breach the lease because it failed to perform a preoccupancy inspection pursuant to section 7.1. That section of the lease calls for the tenant to perform an inspection prior to

occupying the premises and for both parties to record the results on a particular form and sign it. The inspection is to be "used as the basis for determining the condition of the premises prior to and immediately following the demise thereof." Section 7.1 also provides that any discrepancies or deviations in the completed construction may be cause for adjustment of the rent or termination of the lease at the tenant's discretion. It is undisputed that FedEx did not follow the precise dictates of section 7.1—it did not obtain an inspection memorandum that was signed by both parties. We conclude, however, as the trial court did, that FedEx's omission did not release CCW from its contractual obligations.

A "first breach" by one contracting party may release the other party from its contractual duties if the first breach is material and sufficiently serious. *TXO Prod. Corp. v. Page Farms, Inc.*, 287 Ark. 304, 698 S.W.2d 791 (1985); *Taylor v. George*, 92 Ark. App. 264, 212 S.W.3d 17 (2005); *Harness v. Curtis*, 87 Ark. App. 337, 192 S.W.3d 267 (2004); *Vereen v. Hargrove*, 80 Ark. App. 385, 96 S.W.3d 762 (2003). In determining whether a breach is material, a court may consider the extent to which the injured party will obtain the substantial benefit that he reasonably anticipated. *TXO, supra; Cont'l Carbonic Prods., Inc. v. Cohen*, 96 Ark. App. 305, 241 S.W.3d 296 (2006); *Taylor, supra.* Here, CCW obtained the substantial benefit of a preoccupancy inspection as reasonably anticipated by section 7.1 of the lease. The inspection was simply conducted pursuant to a different contractual provision, section 7.3.

Section 7.3 of the lease, titled "Punch-list Inspection," provides that the parties shall perform a joint inspection as soon as practicable after tender of possession of the premises and shall reduce it to a written memorandum. This section goes on to state that, immediately upon execution of the memorandum, the landlord, at its sole cost and in a manner that will not unreasonably interfere with the tenant's occupancy, use, and quiet enjoyment, "shall remedy those matters or defects set forth in such memorandum ... which constitute a breach of Landlord's warranties and representations regarding the condition of the Premises." FedEx conducted a joint inspection with CCW before it moved into the leased facility and prepared a written punch-list in accordance with section 7.3. Later, when CCW did not correct all of the items on the punch list, FedEx pursued its remedy under section 7.3 rather than the rent-reduction or termination remedies under section 7.1. In short, FedEx's preoccupancy inspection was conducted pursuant to and in compliance with section 7.3, and the lack of exact compliance with section 7.1 was immaterial. In particular, the lack of CCW's signature on the punch list can hardly be deemed of consequence to CCW where CCW did not complain of the lack of a signature and in fact corrected several items on the list before ignoring FedEx's requests. In considering the materiality of a first breach, we may look to whether the breach appeared to be of any real consequence to the other contracting party. *See Vereen, supra.*

CCW argues next that FedEx waived any right to insist on repairs or alterations when it moved into the building without preparing the preoccupancy inspection required by section 7.1. We disagree. Waiver is the intentional relinquishment of a known right, done with the intent to forever be deprived of its benefits. *Smith v. Walt Bennett Ford, Inc.*, 314 Ark. 591, 864 S.W.2d 817 (1993). It may occur where a person takes action which is inconsistent with the right or his

intention to rely on it. *Id.* Waiver is ordinarily a question of fact. *Adams v. Nationsbank,* 74 Ark. App. 384, 49 S.W.3d 164 (2001).

■ The acceptance or occupation of a building does not constitute waiver of defective work on the building unless the occupant's use of the structure is accompanied by conduct clearly indicating an acceptance of the work. *Carter v. Quick,* 263 Ark. 202, 563 S.W.2d 461 (1978). FedEx did not accept any defective work when it moved into the building. Rather, it prepared a list of defects prior to moving in and insisted, pursuant to section 7.3, that CCW repair the defects. Under these circumstances, we cannot say that the circuit court clearly erred in failing to find a waiver by FedEx or in finding CCW liable for breach of the lease.

■ CCW's next argument is that the circuit court employed an incorrect measure of damages when it awarded FedEx the cost of repairing the defects. CCW claims that, because the cost of repairs was large in comparison with the amount of rent, the correct measure of damages was FedEx's loss of use of the building. CCW cites *Young v. Berman,* 96 Ark. 78, 131 S.W. 62 (1910), which held that, where a landlord breaches an obligation to repair and the character of the repairs is not extensive, the measure of damages is the cost thereof; but where | ₇the repairs are extensive and the cost would be excessively large in comparison with the amount of the rent, the measure of damages is the diminution in value of the rented property.

■ CCW's point might be well taken had the parties not agreed in their lease to the damages available in the event

of a breach. Section 17.1 provides that if, upon receiving notice, the landlord fails within fifteen business days to perform any term, condition, covenant, or obligation of the lease, the tenant may cure the default at the landlord's sole expense, including a twenty-percent supervision fee, and the landlord shall reimburse the tenant for its costs and expenses. Parties are free to contract on any terms that do not violate public policy or Arkansas statutes. *Pest Mgmt., Inc. v. Langer,* 369 Ark. 52, 250 S.W.3d 550 (2007). In particular, contracting parties may fashion their own remedies in the event of a breach. *See generally Schminke Milling Co. v. Diamond Bros.,* 99 F.2d 467 (8th Cir.1938); *Skanska USA Bldg., Inc. v. Smith Mgmt. Constr., Inc.,* 184 Md.App. 659, 967 A.2d 827 (2009). The parties here agreed on a remedy in the event of a breach, and we see no reason why they should not be bound to it.

We therefore affirm on direct appeal.[1]

## II. *Cross-appeal*

■ FedEx challenges the circuit court's denial of prejudgment interest. The court ruled that

| ₈plaintiff has sought varying amounts from the defendant over the course of this litigation and the final award was not definitely ascertainable by mathematical computation, nor could it be calculated without using the court's opinion or discretion.

FedEx argues that it had always sought a consistent amount of damages from CCW and that its damages were ascertainable with reasonable certainty.

■ Prejudgment interest is compensation for recoverable damages wrong-

---

1. CCW briefly contends, in a one-sentence argument, that the circuit court erred in finding that the repairs made by FedEx/Nabholz were necessary to fulfill the initial terms of the lease. This argument is undeveloped and unsupported by facts or law, so we will not consider its merits. *Kuelbs v. Hill,* 2010 Ark. App. 793, 379 S.W.3d 716.

fully withheld from the time of loss until judgment. *Bonds v. Hunt,* 2010 Ark. App. 415, 379 S.W.3d 57. It is allowable where the amount of damages is definitely ascertainable by mathematical computation or if the evidence furnishes data that makes it possible to compute the amount of damages without reliance on opinion or discretion. *Id.* If a method exists for fixing the exact value of a cause of action at the time of the occurrence of the event that gave rise to the cause of action, prejudgment interest should be awarded. *Id.* Where prejudgment interest may be collected under the above rules, a party is entitled to it as a matter of law. *Travis Lumber Co. v. Deichman,* 2009 Ark. 299, 319 S.W.3d 239.

▮ In this case, we find no error in the court's denial of prejudgment interest. When FedEx contracted with Nabholz to cure the construction defects, Nabholz's contract price varied over time by several thousand dollars. Later, when FedEx filed suit, it prayed for damages of $159,092.40 in its initial complaint before seeking the amount eventually awarded, $189,861.60, in its amended complaint. Furthermore, during trial, CCW disputed whether all of the work performed by Nabholz was necessary or reasonably priced, and the circuit court was required to exercise its judgment on that dispute. Where conflict exists over the validity of the damages sought by the plaintiff and the fact-finder is required to use its discretion to determine the amount of damages, prejudgment interest should not be awarded. *See generally Sims v. Moser,* 373 Ark. 491, 284 S.W.3d 505 (2008); *Ray & Sons Masonry Contrs., Inc. v. U.S. Fidelity & Guar. Co.,* 353 Ark. 201, 114 S.W.3d 189 (2003); *Woodline Motor Freight, Inc. v. Troutman Oil Co.,* 327 Ark. 448, 938 S.W.2d 565 (1997); *City of Moro v. Cline–Frazier, Inc.,* 26 Ark. App. 138, 761 S.W.2d

615 (1988). The trial court is affirmed on this point.

▮ FedEx's final argument is that the circuit court erred in awarding it only half of the attorney fees requested. The parties' lease provided that, if either party commenced an action against the other party and prevailed, that party would be entitled to reasonable attorney fees and costs. Additionally, Arkansas allows a prevailing party in a breach-of-contract case to recover reasonable attorney fees. Ark.Code Ann. § 16–22–308 (Repl.1999). A trial court is not required to award attorney fees, however, and any amounts awarded are discretionary. *Swink v. Lasiter Constr., Inc.,* 94 Ark. App. 262, 229 S.W.3d 553 (2006).

After trial, FedEx, as the prevailing party, submitted a verified application for $30,548.76 in attorney fees and expenses. The attorney's work spanned several months and included travel time, discovery, and trial days. The attorney's rate was $175 per hour, and she charged lesser rates for paralegal and law-clerk assistance. The circuit court held a hearing on the fee request, during which CCW argued that the fee request was too high. Thereafter, the court took the matter under advisement, then ruled that fifty percent of the requested amount was a reasonable fee. The court did not explain its grounds for the fee reduction.

▮ There is no fixed formula in determining what constitutes a reasonable attorney fee. *Swink, supra.* We have held, however, that a trial court should be guided by certain factors in considering a fee request, including the experience and ability of counsel, the time and labor required to perform the legal services properly, the amount involved in the case and the results obtained, the fees customarily charged, and several other matters commonly known as the *Chrisco* factors. *See*

*Chrisco v. Sun Indus.*, 304 Ark. 227, 800 S.W.2d 717 (1990). Where a court reduces an attorney-fee request without explanation or reference to the *Chrisco* factors, our practice has been to remand for the trial court to conduct such an analysis. *Bailey v. Rahe*, 355 Ark. 560, 142 S.W.3d 634 (2004); *Swink, supra; Scott v. Estate of Prendergast*, 90 Ark. App. 66, 204 S.W.3d 110 (2005). In light of these authorities, we reverse and remand on this point so that the circuit court can conduct an analysis of the fee award using the *Chrisco* factors.

Affirmed on direct appeal; affirmed in part and reversed and remanded in part on cross-appeal.

PITTMAN and MARTIN, JJ., agree.