2010 Ark. App. 415

**Bobby BONDS and Image Homes, Inc., Appellants**

v.

**Fred HUNT, Trustee of the Fred Hunt Revocable Trust, Appellee.**

**No. CA 09–979.**

Court of Appeals of Arkansas.

May 12, 2010.

29. *Craig v. Carrigo*, 353 Ark. 761, 121 S.W.3d 154 (2003); *Harold Ives Trucking Co. v. Pro Transp.*, 341 Ark. 735, 19 S.W.3d 600 (2000).

John D. Coulter, James, Carter & Coulter, PLC, Shirley Jones, Wilson, Engstrom, Corum & Coulter, Little Rock, for appellants.

George D. Ellis, Ellis Law Firm, P.A., Benton, for appellee.

M. MICHAEL KINARD, Judge.

This is a contract case in which the circuit court granted summary judgment in favor of appellee Fred Hunt. Bobby Bonds and Image Homes, Inc., appeal, arguing the following points for reversal: (1) the trial court erred in holding that the parties had entered into a contract; (2) the trial court erred when it pierced the corporate veil to hold Bonds individually liable; (3) the trial court erred when it awarded appellee prejudgment interest at the rate

of ten percent (10%) per annum; (4) the trial court erred when it awarded appellee attorney's fees of $50,000.

### Standard of Review

Our supreme court has set forth the standard of review in summary-judgment cases as follows:

Summary judgment is granted when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. Once the moving party has established a prima facie case showing that no genuine issue of material fact remains to be litigated, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Our review focuses not only on the pleadings, but also on the affidavits and documents filed by the parties.

*Skallerup v. City of Hot Springs*, 2009 Ark. 276, at 2, 309 S.W.3d 196, 199 (citations omitted). After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable people might reach different conclusions from those undisputed facts. *Heinemann v. Hallum*, 365 Ark. 600, 604, 232 S.W.3d 420, 423 (2006).

### Facts

Appellant Bobby Bonds owned eighty percent and appellee Fred Hunt, as trustee of the Fred Hunt Revocable Trust, owned twenty percent of appellant Image Homes, Inc., which was formed in 1985. Appellee filed a complaint in Saline County Circuit Court on December 28, 2007, seeking enforcement of a contract under which Image Homes was to purchase appellee's outstanding shares of the corporation. The basis of the alleged contract was a document dated September 19, 2007, in which appellee wrote:

Dear Bobby,

In reference to my memo of a couple of weeks ago, it is my desire to liquidate my 20% interest in Image Homes, Inc. I would like to complete this transaction the same day we close our transaction of Westpointe North, LLC sale.

Image Homes and Fred Hunt Company are the owners of Westpointe North, LLC, who are the sellers of Andres Place Assets. Therefore, liquidation of my interest in Image Homes, Inc. is important at this time.

Charles Jerry, CPA can determine the current "book value" of Image Homes, Inc. as of September 30, 2007 or the "book value" of Image Homes, Inc. as of September 30, 2006. Either date is acceptable with me.

If this is agreeable with you, please indicate your acceptance below.

The letter was signed by Fred Hunt, President of Fred Hunt Company, Inc. At the bottom of the page, under "Accepted: Image Homes, Inc.," is appellant Bonds's signature dated September 21, 2007. The referenced memo was a handwritten note dated September 5, 2007, from appellee Hunt to Bonds, in which appellee expressed his desire to have Image Homes purchase his twenty-percent interest at the time Hunt sold another company owned by him and Image Homes. Hunt had arranged to sell his portion of this other company, Westpointe North, LLC, to a third party.

In the lawsuit, appellee contended that he was owed $156,132 (twenty percent of $780,664—the net worth of Image Homes), not the $64,494 tendered at the closing. Appellants affirmatively asserted that $64,-494—twenty-percent ownership interest in the company, less the value of appellant Bonds's home, in which appellee held no ownership interest—was all that appellee was owed. So, at issue in this lawsuit was whether the book value of Image Homes should include Bonds's personal residence. The value of the house was included on the company's 2006 balance sheet, but Bonds contended that it should have been excluded.

Both sides moved for summary judgment, and the court granted appellee's motion. The trial court found that there was a valid and enforceable contract between the parties. The final order dated May 21, 2009, provides:

> 2. ... The contract supplies the mutual obligations of the parties: by the Plaintiff [appellee] to sell his twenty percent ownership in Image Homes, Inc., and the Defendant [appellee] to purchase this interest in Image Homes, Inc.
>
> 3. The contract further specifies an agreed-upon general time within which that purchase would occur.
>
> 4. Having reviewed Plaintiff's motion for reconsideration and the attachments and the oral arguments before the Court, the Court finds, based upon the documents provided, which are without dispute as to their validity, that Defendant Bonds was aware of the monetary commitment and that the book value of Image Homes, Inc., was in the amount of $765,468.00. Therefore, the Court grants summary judgment for twenty percent (20%) of that amount, which is the percentage of the Plaintiff's ownership interest.

Appellants filed a timely notice of appeal on June 11, 2009.

### The Contract

1. *Whether the trial court erred in finding that there was an enforceable contract*

Under Arkansas law, a contract must include these essential elements: 1) competent parties, 2) subject matter, 3) legal consideration, 4) mutual agreement, 5) mutual obligations. *Price v. Willbanks*, 2009 Ark. App. 849, 374 S.W.3d 28 (citing *Simmons v. Simmons*, 98 Ark.App. 12, 15, 249 S.W.3d 843, 846 (2007)). Appellants argue that the elements of mutual agreement and mutual obligations were not met in this case.

For their argument regarding mutual agreement, appellants contend that the conduct of the parties and the absence of essential terms show that there was no mutual agreement between the parties. They point to the parties' "six weeks of post-memorandum negotiations" in an effort to reach a "final and comprehensive agreement" as evidence that neither party intended the document to be the governing agreement. We do not find this argument persuasive because it seems Bonds wanted to change the terms of the already-final agreement, not appellee. Appellants also argue that the document could not be a contract because it lacked essential terms—namely, a purchase price. The document did, however, provide a mechanism for determining the purchase price. It stated that CPA Charles Jerry could determine the "book value" of Image Homes, Inc., as of either September 30, 2007, or September 30, 2006. It was undisputed that only the 2006 accounting information was complete at that time. We agree with the trial court that there was sufficient evidence of mutual agreement between these long-time business associ-

ates to find that they had formed a contract.

■ For their argument regarding mutual obligations, appellants contend that the letter/memorandum does not impose obligations on either party. We disagree. Under the terms of the contract, appellant Image Homes was obligated to purchase, and appellee was obligated to sell, appellee's shares of Image Homes stock on the day of closing in the Westpointe North transaction. We affirm on this point.

2. *Whether the trial court erred when it pierced the corporate veil to hold Bonds individually liable*

Appellants next argue that the trial court erred when it pierced the corporate veil and held Bobby Bonds individually liable for the judgment. The court's decision to hold appellants Image Homes and Bobby Bonds jointly and severally liable for the amount of the judgment appears to be based on its finding that Bonds "was aware of the monetary commitment and that the book value of Image Homes, Inc. was in the amount of $765,468.00." Furthermore, the court wrote that in response to appellants' motion requesting clarification as to which defendant (Bonds or Image Homes) was found to be liable, the filings "show the course of conduct between the parties from the agreement between them to do business together up through and including the contract that brought this matter before the Court."

Regarding piercing the corporate veil, our supreme court has written:

> It is a nearly universal rule that a corporation and its stockholders are separate and distinct entities, even though a stockholder may own the majority of the stock. In special circumstances, the court will disregard the corporate facade when the corporate form has been illegally abused to the injury of a third

party. The conditions under which the corporate entity may be disregarded or looked upon as the alter ego of the principal stockholder vary according to the circumstances of each case. The doctrine of piercing the corporate veil is founded in equity and is applied when the facts warrant its application to prevent an injustice. Piercing the fiction of a corporate entity should be applied with great caution. The issue of whether the corporate entity has been fraudulently abused is a question for the trier of fact, and the one seeking to pierce the corporate veil and disregard the corporate entity has the burden of proving that the corporate form was abused to his injury.

*K.C. Properties of N.W. Ark., Inc. v. Lowell Inv. Partners, LLC,* 373 Ark. 14, 32, 280 S.W.3d 1, 15–16 (2008) (internal citations omitted).

■ Here, there was no evidence to support piercing the corporate veil and holding Bonds individually liable. Bonds signed his name under "Accepted: Image Homes, Inc." There were no allegations, much less evidence, of fraud or other abuse of the corporate form that would allow for holding Bonds individually liable.

Based on the foregoing, we reverse the circuit court on this point and hold that appellant Bonds is not individually liable for the amount of the judgment.

3. *Whether the trial court erred when it awarded appellee prejudgment interest at the rate of ten percent (10%) per annum*

■ Appellants next argue that the trial court erred in awarding prejudgment interest and in doing so at the rate of ten percent. Prejudgment interest is compensation for recoverable damages wrongfully withheld from the time of the loss until judgment. *Reynolds Health Care Servs.,*

*Inc. v. HMNH, Inc.*, 364 Ark. 168, 217 S.W.3d 797 (2005); *Perkins v. Cedar Mtn. Sewer Imp. Dist. No. 43 of Garland Co.*, 360 Ark. 50, 199 S.W.3d 667 (2004). Prejudgment interest is allowable where the amount of damages is definitely ascertainable by mathematical computation, or if the evidence furnishes data that makes it possible to compute the amount without reliance on opinion or discretion. *Ray & Sons Masonry v. United States Fidelity & Guar. Co.*, 353 Ark. 201, 114 S.W.3d 189 (2003); *Woodline Motor Freight, Inc. v. Troutman Oil Co.*, 327 Ark. 448, 938 S.W.2d 565 (1997). This standard is met if a method exists for fixing the exact value of a cause of action at the time of the occurrence of the event that gives rise to the cause of action. *Dugal Logging, Inc. v. Ark. Pulpwood Co.*, 66 Ark.App. 22, 988 S.W.2d 25 (1999). We believe that the amount of damages in this case is definitely ascertainable by referring to the company's financial statement.

■ ₈The issue of when the interest would begin to accrue is slightly more difficult. The trial court set the date at which interest would begin to accrue as November 1, 2007, which appellants contend was chosen arbitrarily. November 1 appears to have been chosen because it was the date that appellant's attorney sent appellee's attorney a letter informing him that Bonds "strongly believes that the book value in Image Homes for purposes of calculating the purchase price should exclude his personal residence that is currently reflected on the balance sheet." It has been recognized that the issue of when prejudgment interest commences is a "confusing" one in the case law. Howard W. Brill, ARKANSAS LAW OF DAMAGES § 10-5, at 154 (4th ed.2002). We believe that the time of appellee's loss was December 6, the date of the Westpointe North closing when the check was tendered, and not

November 1. Upon our de novo review of the trial court's decision to award interest, we modify the court's judgment to reflect that the date on which prejudgment interest commences is December 6, 2007.

■ As to the amount of prejudgment interest, appellants make a constitutional challenge that was not raised to the trial court. In *Farm Bureau Mut. Ins. Co. of Ark., Inc. v. David*, 324 Ark. 387, 921 S.W.2d 930 (1996), our supreme court held that the appellant's failure to raise arguments regarding the award of prejudgment interest at the trial level meant that those arguments were not preserved for appellate review. Accordingly, we hold that appellants' arguments regarding the constitutionality of prejudgment interest were not preserved for our review.

### ₉*Attorney's Fees*

■ The circuit court awarded appellee $50,000 in attorney's fees and $170 in costs. Pursuant to Arkansas Code Annotated section 16–22–308 (Repl.1999), the prevailing party in a contract action may be awarded a reasonable attorney's fee. On appeal, such an award is reviewed for abuse of discretion. *E.g., First United Bank v. Phase II*, 347 Ark. 879, 69 S.W.3d 33 (2002); *Millwood–RAB Marketing, Inc. v. Blackburn*, 95 Ark.App. 253, 236 S.W.3d 551 (2006). It has been observed that there is no fixed formula in determining reasonable attorney's fees. However, a court should be guided in that determination by the following long-recognized factors: (1) the experience and ability of the attorney; (2) the time and labor required to perform the service properly; (3) the amount in controversy and the result obtained in the case; (4) the novelty and difficulty of the issues involved; (5) the fee customarily charged for similar services in the local area; (6) whether the fee is fixed or contingent; (7) the time limitations im-

posed upon the client in the circumstances; (8) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the attorney. *Phi Kappa Tau Housing Corp. v. Wengert*, 350 Ark. 335, 341, 86 S.W.3d 856, 860 (2002) (citing *Chrisco v. Sun Indus., Inc.*, 304 Ark. 227, 800 S.W.2d 717 (1990)). Due to the trial judge's intimate acquaintance with the record and the quality of service rendered, we recognize the superior perspective of the trial judge in assessing the applicable factors. *Id.*

Here, appellee filed a motion for attorney's fees on April 14, 2009, with an affidavit attached. Appellee's attorney, George Ellis, set forth his credentials and stated that he had expended approximately 200 hours representing Hunt in the litigation with Bobby Bonds. Given his hourly rate of $250, Ellis sought $50,000 in attorney's fees, which he noted was slightly less than one-third of the recovery in this case. Also attached to the motion for attorney's fees were affidavits of three Benton attorneys expressing their opinion that the requested attorney's fees were reasonable. The motion was also accompanied by a brief, which addressed the factors outlined by our supreme court for deciding the reasonableness of attorney's fees.

Appellants argue that, even if the summary judgment is upheld on appeal, the trial court erred in awarding attorney's fees of $50,000 because the amount was excessive. They contend that appellee "continuously represented to the trial court that the issues were 'simple and straightforward' *until* his fee petition." They further point out that the case did not go to trial or have any lengthy evidentiary hearings, that the amount awarded was almost double the amount their attorney charged (approximately 136 hours at $185 per hour, which came to $25,030.50)

and that the trial court did not require appellee to produce billing statements.

We see no abuse of discretion in the trial court's award of attorney's fees in this case. The court expressly stated that it based the fee award on the *Chrisco* factors. The court had before it the affidavit of appellee's attorney, as well as the affidavits of three other attorneys who stated that the fees requested were reasonable for this case. Moreover, the accumulation of fees was the result of many months of discovery and advocacy, regardless of the complexity of the case. We affirm on this point.

Affirmed as modified in part; reversed in part.

ROBBINS and MARSHALL, JJ., agree.