

# ARKANSAS COURT OF APPEALS

DIVISION I

**No.** CV–16–564

| | |
|---|---|
| GRANT COUNTY UNIFIED COMMUNITY RESOURCE COUNCIL, INC. D/B/A SPIRIT OF SHARING AND/OR KEEPING THE FAITH<br>**APPELLANT** | **Opinion Delivered:** March 1, 2017<br><br>APPEAL FROM THE GRANT COUNTY CIRCUIT COURT<br>[NO. 27CV-13-20-1] |
| V.<br><br>MARY PENNINGTON<br>**APPELLEE** | HONORABLE CHRIS E WILLIAMS, JUDGE<br><br>REVERSED AND REMANDED |

## BART F. VIRDEN, Judge

Grant County Unified Community Resource Council (hereinafter "the shelter") appeals the order of the Grant County Circuit Court awarding summary judgment to Mary Pennington. The crux of this case is whether there was an express or implied agreement between the shelter and Pennington concerning the exclusion of bona fide meal and sleep hours from the computation of the hours she worked. We hold that the circuit court incorrectly awarded summary judgment because there are material facts in dispute concerning the existence of an agreement between the parties. Accordingly, we reverse and remand for a trial.

### I. *Factual History*

On February 25, 2013, Pennington filed a complaint alleging that the shelter violated the overtime provisions of the Arkansas Minimum Wage Act (AMWA) by requiring her to work in excess of 40 hours per week but failing to pay her for the overtime hours. In her complaint, Pennington stated that she began working as an "advocate" at the shelter in

February 2010 and that she was paid an hourly rate to complete intake forms, help new residents, do light cleaning, and answer the phone. Pennington asserted that her supervisor at the shelter controlled her work schedule and that her paycheck reflected that she worked 80 hours over a 2-week period. Pennington argued that during the 3 years she had worked at the shelter, she actually worked 96 and 128 hours in alternating 2-week periods. In her complaint, Pennington sought declaratory judgment, monetary damages, liquidated damages, prejudgment interest, civil penalties, and costs including attorney's fees.

On April 10, 2013, the shelter filed an answer to Pennington's complaint. The shelter responded that, under the AMWA, the hours for which Pennington sought compensation were not compensable. The shelter argued that the statute of limitations on her claim had run, that Pennington had failed to mitigate her damages, and that she had consented to the conduct. The shelter also asserted estoppel, unclean hands, release, waiver, laches, indemnification and "any other defenses or affirmative defenses contained in Ark. R. Civ. P. 8(c) and 12(h)." The shelter explained that "[p]laintiff agreed, either expressly or impliedly, to exclude bona fide meal and regularly scheduled sleeping periods, was provided adequate sleeping facilities, and thus, the hours alleged to have been work time, are excluded from compensation under the AMWA."

On April 13, 2015, Pennington filed a motion for summary judgment. She argued that she was owed $60,452.88 by the shelter because she was "engaged to wait" and thus, should have been compensated for all the hours she was scheduled to be at work, including time spent sleeping or eating. Pennington argued that, in her capacity as an advocate, she was required to be on call "24/7" to answer the crisis hotline. Pennington asserted that she

was scheduled to work continuous day-and-night shifts that alternated weekly between 48-hour-shifts and 64-hour shifts, but she was never paid for working more than 40 hours.

In her deposition, Pennington stated that she had been hired to work for the shelter in February 2010. She testified that she had spoken with her supervisor, Diana Riley, who explained to her that she would be answering the phone, taking care of the women residing in the shelter, and keeping her area tidy. Pennington stated that Riley told her that her shift would begin on Wednesdays at 8:00 a.m. and end on Friday afternoons at 4:00. Pennington testified that Riley also told her that she would be paid for working 40 hours. Pennington stated that when she worked the overnight shifts, she was provided with a place to sleep but that she "slept with one eye open" and that she was expected to wake up and answer all phone calls at any time of the day or night. Pennington testified that she had insomnia, and took half an Ambien to try to get some sleep during her overnight shifts. Pennington explained that in addition to calls to the hotline, she occasionally received telemarketer calls and personal calls for residents of the shelter, though generally not after 11:00 p.m. Pennington testified that she was not allowed to leave the premises or "do everything [she] wanted" during her shift.

In her deposition, Riley was questioned about the eight-hour sleep-time deduction:

COUNSEL: It was the policy of the GCUC prior to the filing of this lawsuit that no advocates were paid—that all advocates received an eight-hour sleep time deduction for overnight shifts, correct?

RILEY: Correct.

. . . .

COUNSEL: You told us a little while ago that when you hired Ms. Pennington, you told her, these are your shifts, you won't be paid for eight hours each night which will be designated as sleep time, right?

RILEY: Yes.

. . . .

COUNSEL: And there was not a written agreement but sort of an implied agreement that they—that each advocate would not be paid for this eight hours per night, correct?

RILEY: Yes.

. . . .

COUNSEL: And I think you testified earlier that you believed that Ms. Pennington understood that she would not be paid for a period of eight hours for any overnight shift, correct?

RILEY: Yes.

However, Pennington described the payment policy conversation differently. When Pennington was asked what Riley told her concerning her shift, she answered:

PENNINGTON: I would come in Wednesday at 8:00 in the morning on Wednesday, and I would get off Friday at 4:00.

COUNSEL: Did you have any objection to that?

PENNINGTON: No.

. . . .

COUNSEL: Did you understand that at the time that you went to work for GCUC that GCUC was not agreeing to pay you for eight hours of time that you were going to be able to sleep?

PENNINGTON: No.

The shelter responded to Pennington's motion for summary judgment. It asserted that though Pennington was scheduled for two 24-hour shifts and three 24-hour shifts, she had agreed that eight hours per each 24-hour period would be excluded as "sleep time." The shelter also asserted that, as per an express agreement, there were "bona fide meal

periods" during which time Pennington was relieved of all duties. The shelter also argued that there was an implied agreement that sleep and meal times were to be excluded from Pennington's compensable time based on her acceptance of paychecks which reflected 40-hour-week compensation for several years. Thus, the shelter argued, there existed an express or implied agreement between the parties to exclude sleep and meal times, and Pennington had not worked overtime for which she had not been paid.

The shelter also argued that Pennington offered "companionship services" and that this type of work was excluded from minimum-wage and overtime-pay provisions. The shelter attached Riley's deposition in which she stated that the crisis hotline was operational "24/7" and that Pennington had been hired, in part, to answer the hotline. The shelter cited Riley's deposition in which she had stated that Pennington understood that 8 hours of her overnight shift were considered "sleep time," that she would not be paid for those hours, and that this agreement was verbal and had never been reduced to writing.

The shelter filed a cross-motion for summary judgment. In its motion, the shelter argued that (1) there is an exception to overtime pay for employees who work 24-hour shifts and receive bona fide sleeping and meal periods, (2) Pennington expressly and impliedly agreed to her hours and payment terms, and (3) if Pennington falls under the "homeworker exception," her express and implied agreement to exclude sleeping and meal periods still bars her recovery of overtime wages.

At the hearing Pennington argued that there had been no agreement that sleep and meal times would be excluded from her paycheck. The shelter responded that Pennington had agreed to the reduction of her hours for sleep time, that she in fact was able to sleep,

and that few calls came in after 10:00 p.m. The shelter explained that it had overpaid Pennington for the hours slept in the interest of retaining an employee and that Pennington had agreed to "waiting to be engaged" rather than being "engaged to wait."

After taking the matter into consideration, the circuit court granted summary judgment in favor of Pennington. In the order, the circuit court stated that it was making "the following findings of fact." It found that there was no written contract between the parties and "no proof of a working agreement other than some verbal statements made between the employee and the employer." The circuit court found that Pennington was "not capable of exercising her own time as she may desire." The circuit court also found that there was no express or implied agreement between the parties to exclude sleeping hours and that Pennington's sleep periods were therefore compensable. The circuit court also found that there was no proof of the companionship exception asserted by the shelter. The circuit court stated that the fact that Pennington accepted her paycheck was not "a relevant issue of an implied agreement[.]" The circuit court found that Pennington was "on call" because she could not use the time as her own. The court denied the shelter's cross-motion for summary judgment. The court deferred on the issue of damages and later filed a separate order on that issue.

The shelter filed a timely notice of appeal.

## II. *Summary Judgment*

Summary judgment is to be granted by the circuit court only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Killian v. Gibson*, 2012 Ark. App. 299, at 6, 423 S.W.3d 98, 101. In

reviewing a grant of summary judgment, an appellate court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Id.* This court views the evidence in the light most favorable to the party against whom the motion for summary judgment was filed and resolves all doubts and inferences against the moving party. *Id.*

Even when parties file cross-motions for summary judgment, the proceeding is not converted into a bench trial; rather, the circuit court's ruling must still be one of law. *Po-Boy Land Co. v. Mullins*, 2011 Ark. App. 381, at 7–8, 384 S.W.3d 555, 560. If material issues of fact remain to be decided, the circuit court may deny cross-motions for summary judgment. *Acuff v. Bumgarner*, 2009 Ark. App. 854, 371 S.W.3d 709. Where it is impossible to determine on appeal that either party is entitled to judgment as a matter of law, summary judgment should be reversed, even if the parties have filed cross-motions for summary judgment. *Deltic Timber Corp. v. Newland*, 2010 Ark. App. 276, 374 S.W.3d 261.

In the present case, the circuit court erred in awarding summary judgment because certain material facts concerning the existence of an agreement between Pennington and the shelter were disputed. In *Vang Lee v. Mansour*, 104 Ark. App. 91, 96, 289 S.W.3d 170, 174 (2008), our court reversed and remanded the case because the circuit court improperly weighed the facts and made findings:

> The summary judgment was also improper because it "found facts." This is not the purpose of summary judgment, which is to determine if there are issues of fact to be tried. The summary judgment order specifically stated that the trial court "makes the following findings of fact" including that appellee did not mislead the trial court in asking to withdraw and that appellee complied in all relevant ways with Rule 64. These were not agreed or stipulated facts, but were instead directly conflicted by appellant through affidavit and allegation.



(Internal citations omitted.)

In the present case, the circuit court made similar findings of fact, explicitly stating that it weighed the conflicting testimony:

> The Court, in reviewing the motions and briefs along with the exhibits that are attached thereto, including the depositions of the parties for both the Plaintiff and the Defendant makes the following findings of fact.

> There is no written contract between the parties. *In balancing all of the testimony, there's no proof of a working agreement other than some verbal statements made between the employee and the employer.* The employee services and relations with the employer was in a status of being at the premises and therefore, not capable of exercising her own time as she may desire. *Since there is no expressed or implied agreement*, that the Court can find from the totality of the circumstances of the depositions and other matters before the Court, the sleeping times and lunch period times constitute working hours. An implied agreement to exclude sleeping and/or lunch times must be an actual meeting of the minds" between the parties. *See K. C. Props. v. Lowell Inv. Partners*, 373 Ark. 14 (2008).

> The Court finds the agreement to exclude time for meals and/or sleeping is not valid. Employee is engaged in working for the employer and was required to answer the phone, and continue daily duties even though there would be a possible sleep period that was available to her during the hours of work. Those sleep periods are compensable while she was acting in the service of the employer and operating the crisis hotline phone 24/7 based upon the testimony.

(Emphasis added.)

As in *Vang Lee*, the facts set forth in the depositions of both Pennington and Riley directly conflict as to whether Pennington had agreed to exclude sleep time from the computation of her paycheck or if she had agreed to a cap on her wages. The circuit court weighed this evidence and found that there was no agreement, either implied or express, and that there was no "meeting of the minds" necessary for an express agreement to form.

The circuit court erred in awarding summary judgment because material facts were in dispute. Because of the conflicting testimony it is impossible to discern that either party is entitled to a judgment as a matter of law, and a trial is in order.

Reversed and remanded.

VAUGHT and HIXSON, JJ., agree.

*Rainwater, Holt & Sexton, P.A.*, by: *Denise Reid Hoggard*, for appellant.

*Sanford Law Firm, PLLC*, by: *Josh Sanford* and *Joshua West*, for appellee.