

# ARKANSAS COURT OF APPEALS

DIVISION I

**No.** CV-16-107

| | |
|---|---|
| LESTER FULMER, ROB BENTLEY, ROBERT BEST, AND CARL CHILSON<br>APPELLANTS | **OPINION DELIVERED:** MARCH 1, 2017<br><br>APPEAL FROM THE CLEBURNE COUNTY CIRCUIT COURT<br>[NO. 12CV-12-177-4] |
| V. | |
| WILLIAM HURT, MICHAEL HOOVER, AND MOBILITY LIFT SYSTEMS, LLC<br>APPELLEES | HONORABLE TIM WEAVER, JUDGE<br><br>AFFIRMED |

## ROBERT J. GLADWIN, Judge

Appellants Lester Fulmer, Rob Bentley, Robert Best, and Carl Chilson appeal the October 8, 2015 order entered by the Cleburne County Circuit Court granting the motion for summary judgment filed by appellees William Hurt, Michael Hoover, and Mobility Lift Systems, LLC ("MLS"). On appeal, appellants argue that the trial court imposed a higher standard of misconduct by appellees needed to support piercing the corporate veil than is required by Arkansas law. This appeal initially arose from an earlier lawsuit and related appeals[1] in the Cleburne County Circuit Court between the plaintiffs/appellants and Hurt–Hoover Investments, LLC ("HHI") d/b/a MLS, of which individual defendants/appellees Hurt and Hoover are the sole members.

---

[1] *See Hurt-Hoover Investments, LLC v. Fulmer*, 2013 Ark. App. 621 (*Hurt-Hoover I*), affirming a jury verdict of $651,490 entered in favor of appellants in a suit filed for breach of contract against HHI, and ultimately affirmed by *Hurt-Hoover Investments, LLC v. Fulmer*, 2014 Ark. 461, 448 S.W.3d 696 (*Hurt-Hoover II*).

SLIP OPINION

I. *Facts*

The events leading to this particular appeal began with the signing of an "Interests Purchase and Sale Agreement" ("Agreement") dated June 19, 2008, between appellants and HHI. In the Agreement, appellants agreed to sell, and HHI agreed to purchase, all the interests of appellants in H2O Lifts and Ramps, LLC ("H2O"), of which appellants were the sole owners.

HHI agreed to pay appellants $955,000, with an initial payment of $400,000 in cash at closing, and the remaining $550,000 to be paid by promissory notes from HHI to the respective appellants as follows: (i) Lester Fulmer, $249,750; (ii) Rob Bentley, $194,250; (iii) Robert Best, $55,500; and (iv) Carl Chilson, $55,500. Each note was to be paid in thirty-six monthly installments, starting October 1, 2008, and continuing on the first day of each month thereafter until September 1, 2011, when the final installments of all remaining principal were due.

The Agreement was drafted by HHI's attorney, Robert Jones, at the request of Hoover. Hoover specifically directed Jones to include a right of HHI to offset against appellants' promissory notes in the Agreement. In addition, Jones included the procedure that HHI would follow to assert any offsets.

Appellants were not represented by counsel in the negotiation and execution of the Agreement, and the terms of the indemnity provisions therein were not explained to them at closing. Immediately after the closing on June 19, 2008, HHI assumed control of the business, but Hoover did not conduct an inventory of the assets before the closing because there was a provision in the Agreement to offset any difference that existed after the sale.

Only in September 2008 did HHI actually take possession of and move the parts and equipment to Jonesboro. On July 3, 2008, Hoover and Hurt formed a limited liability corporation named "Lifts, People-Mobility, LLC," the name of which was changed to MLS on September 3, 2008. The acquired assets of H2O were transferred to MLS, and that new LLC continued to operate the business under its name.

The initial installment payments on the promissory notes to appellants were due on October 1, 2008. However, when those payments became due, HHI, through Hoover, notified appellants by letter that it was claiming offsets against the notes, and then immediately deducted those offsets without following the procedure set out in the Agreement. Additional offsets against subsequent installment payments were similarly claimed by HHI without notifying appellants or following the procedures.

Appellees acknowledge that appellants' ownership in H2O was purchased as a "going business" and that they assumed the liabilities of H2O as well as its assets. Notwithstanding, Hoover testified that he did not accept the current normal business expenses of H2O incurred before closing. Offsets claimed included H2O's normal business expenses prior to closing; charges for services ordered by Hoover after the closing; charges for the value of equipment the parties had, prior to the sale, agreed was obsolete; and estimates of future sales that did not develop. Those offsets collectively amounted to more than the cumulative total of all the promissory notes.

After appellants objected to these offsets, HHI made a partial payment on one installment of the notes on April 3, 2009. Fulmer received a check for $135.75; Bentley was

3

paid $105.58; and Best and Chilson each received $30.16. Those checks were not cashed or deposited by appellants.

Appellants filed suit against HHI d/b/a MLS on August 28, 2012, alleging breach of contract by appellees. The suit resulted in the following jury verdicts in favor of appellants: for Fulmer, $294,705; for Bentley, $229,215; for Best, $65,490; and for Chilson, $65,490. A judgment totaling $651,490, including interest, was entered on August 22, 2012. A garnishment served on HHI's bank account in May 2013, realized $4,391.44. That is the only sum that has been paid on the judgment, and Hurt and Hoover have individually paid nothing on the obligation since that time. HHI, doing business as MLS, is continuing to operate H2O. Hoover and Hurt have stated that they plan to pay the remainder of the judgment when the profits from the business are sufficient.

This suit filed on August 28, 2012, attempted to pierce the corporate veil of HHI based on the actions of HHI, and Hurt and Hoover individually, to use the corporate shield of HHI to avoid payment of and render valueless the promissory notes given by HHI to appellants as a major portion of the consideration for H2O. Appellees filed a motion for summary judgment, to which appellants responded, and appellees then replied. Following a hearing, the trial court granted the motion pursuant to an order entered on October 8, 2015. A notice of appeal and a supplemental notice of appeal were timely filed on November 4 and 12, 2015, respectively.

II.  *Standard of Review and Applicable Law*

Summary-judgment motions are governed by Arkansas Rule of Civil Procedure 56(c)(2) (2016), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law on the issues specifically set forth in the motion. A partial summary judgment, interlocutory in character, may be rendered on any issue in the case, including liability.

Summary judgment is appropriately granted by a trial court only when there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Delanno, Inc. v. Peace*, 366 Ark. 542, 237 S.W.3d 81 (2006). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof to demonstrate the existence of a material issue of fact. *Id*. On appellate review, the court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id*. The appellate court reviews the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id*. That review focuses not only on the pleadings, but also on the affidavits and other documents. *Id*.

III.  *Grant of Summary Judgment Regarding Piercing the Corporate Veil*

At issue in this case attempting to pierce the corporate veil is whether the persons acting through the corporation or LLC form have, in some way, abused that form to perpetuate a "fraud or an injustice." Appellants note that, at the hearing on the motion for summary judgment, the trial court accepted appellees' argument that appellants must prove an illegal act or fraud in order to pierce the corporate veil. The trial court stated that "in order for this court to pierce the corporate veil—and I'm citing out of the *Anderson v.*

*Stewart*[2] case—the court will disregard the corporate form when the corporate form has been illegally abused to the injury of a third party." Appellants do not disagree with that statement; however, they assert that there is authority from Arkansas appellate court decisions that supports the piercing of the veil in the absence of an illegal or fraudulent act where the actions by the corporation or corporate officer perpetrate an injustice on the plaintiff. *See McMickle v. Griffin*, 369 Ark. 318, 254 S.W.3d 729 (2007); *Ark. Bank & Trust Co. v. Douglass*, 318 Ark. 457, 885 S.W.2d 863 (1994); *Woodyard v. Ark. Diversified Ins. Co.*, 268 Ark. 94, 594 S.W.2d 13 (1980); *Winchel v. Craig*, 55 Ark. App. 373, 934 S.W.2d 946 (1996) (holding that courts will ignore the corporate form where fairness demands).

While the word "fraud" appears in some cases relating to veil–piercing, appellants submit that it is not the only type of conduct that courts have held will support a piercing of the corporate veil. Other less heinous conduct, such as "hindering and delaying creditors" and "evading a contract obligation" have also been held out to be acts that will support piercing the veil. *See Anderson, supra*; *EnviroClean, Inc. v. Ark. Pollution Control & Ecology Comm'n*, 314 Ark. 98, 858 S.W.2d 116 (1993); *Winchel, supra*. Appellants reiterate that not all of the conduct referred to by the decisions involves activity that rises to the level of actual fraud or criminal equivalent conduct.

Appellants agree that appellees must be shown to have engaged in some kind of deceptive activity, but they urge that the trial court, in adopting appellees' argument that fraud or illegal conduct must be shown, held appellants to too high a standard. Appellants argue that Arkansas' appellate decisions have frequently held that common instances in

---

[2]*Anderson v. Stewart*, 366 Ark. 203, 234 S.W.3d 295 (2006).

which the separate corporate identity may be disregarded are when the corporation attempted to, among other things, hinder, delay, and defraud creditors, or evade a contract or tort obligation. *See Fausett Co. v. Rand*, 2 Ark. App. 216, 619 S.W.2d 683 (1981).

Appellants claim that these cases are consistent with a standard more open to proof of deception supporting the piercing of the corporate veil than the more rigorous standard of criminal fraud or illegal activity that was urged by appellees and adopted by the trial court.

We disagree and hold that the trial court applied the correct legal standard and appropriately granted summary judgment because appellants failed to meet proof with proof in their summary-judgment pleadings. The record reflects that appellants offered no proof that appellees illegally abused HHI or engaged in fraud, deception, or conduct sufficient to justify piercing the veil.

In *K.C. Properties of Northwest Arkansas, Inc. v. Lowell Investment Partners, LLC*, 373 Ark. 14, 80 S.W.3d 1 (2008), our supreme court analyzed piercing the veil of an entity and stated that "the court will disregard the corporate facade when the corporate form has been illegally abused to the injury of a third party." *Id.*, at 32, 280 S.W.3d at 15 (citations omitted). The issue of whether the corporate entity has been fraudulently abused generally is a question for the trier of fact, and the one seeking to pierce the corporate veil and disregard the corporate entity has the burden of proving that the corporate form was abused to his or her injury. *See id*.

Though our courts have stated that whether the corporate form has been abused is a factual issue, summary judgment has been granted when a plaintiff lacked sufficient proof to proceed. *See, e.g.*, *K.C. Props.*, *supra*; *Nat'l Bank of Commerce v. HCA Health Servs. of Midwest,*

*Inc.*, 304 Ark. 55, 800 S.W.2d 694 (1990); *Bonds v. Hunt*, 2010 Ark. App. 415, 379 S.W.3d 57; *Fausett*, *supra*.

Recent decisions from this court have followed the standards espoused in *K.C. Properties*, *supra*, and *Anderson*, *supra*. And in *Bonds*, *supra*, we held that the trial court erred when it permitted a plaintiff to pierce a corporate veil and hold its shareholder personally liable simply because he knew of an amount owed by the corporation and the course of conduct between parties—there was no evidence of fraud or abuse of the corporation to justify piercing the veil and holding him personally liable. *Id.*

Similarly, in *Rhodes v. Veith*, 80 Ark. App. 362, 96 S.W.3d 734 (2003), the plaintiff could not pierce a corporate veil to satisfy the judgment against the corporation with the shareholders' assets. The trial court specifically found "that there was no fraud, illegality, or overreaching," *id.* at 363, 96 S.W.3d at 736, nor was there "evidence of an improper motive, of an illegal objective, or of overreaching," *id.* at 365, 96 S.W.3d at 737, by the shareholders.

These cases support the proposition that in order to pierce a corporate veil, a plaintiff must have evidence of fraud, illegal conduct, or abuse of an entity for the specific purpose of injuring a third party. *See also EnviroClean*, *supra*; *Winchel*, *supra*; *Fausett*, *supra*. Despite appellants' argument that appellees abused their right of setoff contained in the Agreement by (1) claiming numerous setoffs that had no basis in law or fact to the point where the amount of those setoffs exceeded the total amount of the debt; and (2) totally disregarding the indemnification procedures, further showing their lack of good faith, we hold that the record before us is void of evidence of any action by the trial court to indicate that a higher standard of misconduct was required by appellees or required appellants to prove criminal

behavior. In response to the motion for summary judgment, appellants were required to meet the correct burden of proof and nothing more, and we hold that they failed to do so.

Appellees were granted summary judgment because appellants produced insufficient proof to justify piercing the veil of HHI. HHI has incurred annual losses, yet Hurt and Hoover have contributed money every year to keep HHI in business, have not dissolved HHI or formed another entity to avoid payment of the judgment, and have not taken assets from the business, either personally or for the benefit of any third party. The requisite business formalities set out in the Arkansas statutes have been followed, and appellants failed to demonstrate in their summary-judgment pleadings that HHI, as a separate legal entity, has been abused in any form to cause them injury. When there is no evidence of fraud, individual investors are entitled to be dismissed. *See Bonds*, *supra*. Because we agree that there is no material issue of fact left unanswered, we affirm the trial court's grant of summary judgment.

Affirmed.

ABRAMSON and VIRDEN, JJ., agree.

*Richard Mays Law Firm, PLLC*, by: *Richard H. Mays*, for appellants.

*Womack Phelps Puryear Mayfield & McNeil, P.A.*, by: *Jeffrey W. Puryear* and *Ryan M. Wilson*, for appellees.