SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-16-984

| | | |
|---|---|---|
| BRENDA HIGGINS | | **Opinion Delivered** April 26, 2017 |
| | APPELLANT | |
| V. | | APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT [NO. 43CV-14-600] |
| BOB THORNTON, TRUSTEE OF THE TONYA MERRITT HEFFNER TRUST, AND ARKANSAS CHILDREN'S HOSPITAL | | HONORABLE JASON ASHLEY PARKER, JUDGE |
| | APPELLEES | AFFIRMED |

## DAVID M. GLOVER, Judge

Appellant Brenda Higgins appeals the Lonoke County Circuit Court's grant of summary judgment in a quiet-title action to appellees Bob Thornton, as trustee of the Tonya Merritt Heffner Trust, and Arkansas Children's Hospital. Higgins contends the trial court erred in granting summary judgment to the appellees because material facts were in dispute concerning whether a deed to 240 acres of land had been delivered. We affirm the grant of summary judgment.

Alpha Burnett, Brenda Higgins's mother and Tonya Merritt Heffner's grandmother, owned 240 acres in Lonoke County. In June 1994, Burnett signed a warranty deed to Heffner, deeding her

[t]he North Half of the Northeast Quarter (N1/2 NE1/4) of Section 11, Township 4 North, Range 8 West

and reserving a life estate in that 80 acres for herself. At the same time, Burnett executed a warranty deed to Higgins, deeding her

> [t]he West Half of the Southwest Quarter (W1/2 SW1/4) of Section 13, Township 4 North, Range 8 West

and reserving a life estate in that 80 acres for herself as well. Both of these deeds were recorded in October 1994.

On August 18, 2000, Burnett executed her last will and testament. In the will, she specifically left Higgins nothing, but made gifts totaling $26,500 to her sister, a cemetery, and a church; Burnett left the rest, residue, and remainder of her property in trust for her granddaughter, Heffner—the Tonya Merritt Heffner Trust (the "Trust"). Burnett's will provided that should Heffner die without leaving issue surviving, then all the rest, residue, and remainder of Burnett's estate shall be given to Children's Hospital "absolutely and in fee simple." Bob Thornton was appointed by Burnett as the trustee. Thornton was directed in Burnett's will to make distributions of $1400 monthly to Heffner for her support, maintenance, and education; however, Thornton was given the discretion to increase or decrease the monthly allowance as deemed necessary.

Burnett died January 9, 2001. Probate was opened on her estate; her will was filed January 29, 2001. A first and final accounting of Burnett's estate was filed February 7, 2003. Included in this accounting was Burnett's house and 80 acres, valued at $225,000.

On December 15, 2014, Thornton filed a petition to quiet title and to set aside a warranty deed that, although dated May 1, 1990, was not recorded until November 5, 2009, and purportedly transferred all 240 acres originally owned by Burnett from Burnett to Higgins

and Heffner (identified in the deed as Tonya Merritt), as co-tenants, and reserved a life estate in Burnett. The 1990 deed purported to convey the following real property:

East Half (E1/2) of the Southeast Quarter (SE1/4), Section 14, Township Four North (T-4-N), Range Eight West (R-8-W); West one-half (W1/2) Southwest Quarter (SW1/4), Section 13, Township Four North (T-4-N), Range Eight West (R-8-W); and the North one-half (N1/2) of the Northeast Quarter (NE1/4) of Section 11; Township Four North (T-4-N), Range Eight West (R-8-W).

In the petition, Thornton pointed out two 80-acre tracts of the land had already been deeded by Burnett, one to Higgins and one to Heffner, in June 1994; he sought to quiet title to the remaining real property in the Trust and to set aside the 1990 warranty deed. Thornton stated in his petition that not only was he the trustee of the Trust, he was also executor of Burnett's estate, and as such, he had filed his first and final accounting February 7, 2003, listing real estate consisting of a house and 80 acres, cash, and personal property as assets of the estate, and no objection was made to the final accounting. A fiduciary deed transferring the 80 acres was executed and recorded May 6, 2003, by Thornton, as executor of Burnett's estate, to the Trust.

Thornton alleged in the petition that he had administered the Trust from May 6, 2003, to the present, making cash disbursements to Heffner, paying property taxes, and maintaining the property out of the Trust assets until the time of the filing of this petition; that substantially all of the Trust's cash had been expended for Heffner's benefit; and that the only remaining asset was the real estate. Thornton stated he had exercised his power under the Trust and entered into an offer and acceptance to sell the real property in order to raise cash to continue to fund the Trust; however, a title search revealed the 1990 warranty deed from

Burnett to Higgins and Tonya Merritt Heffner. Thornton asked the trial court to set aside the 1990 deed on the basis it was never delivered to Higgins and Heffner prior to Burnett's death, and the deed was not intended to be a postmortem conveyance.

Thornton filed a "First Amendment to the Petition to Quiet Title" September 10, 2015. In this amended petition, Thornton informed the trial court that Heffner had died July 26, 2015, in an automobile accident; at the time of her death, Heffner had no children; and as a result of that fact, Arkansas Children's Hospital was the successor beneficiary to the trust established by Burnett in her last will and testament.

On October 9, 2015, Thornton filed a motion for summary judgment, asserting entitlement to the real property because there was no issue of fact in dispute regarding delivery of the 1990 deed, as there was no delivery of the deed prior to Burnett's death. In his motion, Thornton stated Burnett died January 9, 2001; at the time of Burnett's death, her last will and testament transferred most of her property to the Trust; Burnett's estate was probated, with a fiduciary deed conveying 80 acres to the Trust; under the terms of Burnett's will, Heffner was the primary beneficiary of the Trust, with Arkansas Children's Hospital being the successor beneficiary to the Trust if Heffner died without children; and Heffner died July 26, 2015, in an automobile accident, leaving no children at the time of her death. Thornton further asserted that, during the administration of the Trust, Heffner lived in the home previously owned by Burnett; Thornton paid all taxes on the real property and made improvements to the house as income would allow; when most of the cash has been from the Trust, Thornton offered a portion of the real property for sale; in examining the title, it

was discovered a warranty deed allegedly signed by Burnett May 1, 1990, had been filed some nineteen years later on November 5, 2009; Higgins was not a beneficiary of Burnett's estate; the 1990 deed did not pass title to Higgins and Heffner because it was not delivered before Burnett's death; and the 1990 deed allegedly executed by Burnett was in Burnett's possession at the time of her death and was only later found in her papers some nineteen years later, which was over eight years after Burnett's death. Thornton asserted there was no issue of fact concerning the lack of delivery of the 1990 deed prior to Burnett's death. In support of this assertion, Thornton attached Higgins's response to interrogatories and request for production of documents. In the first interrogatory, five questions were asked:

1.      Who has possession of the original deed now and who had possession of the deed from May 1, 1990, until the present?

A: Defendant, Brenda Higgins, now has possession of the original deed. Prior to Defendant Higgins taking possession of the Deed, it was located in the house at 204 Burnett Rd., Ward, AR.

2.      How it became in your possession.

A: Defendant Higgins told Defendant Merritt [Heffner] she wanted to see Higgins' father's Navy papers and ammo box.

3.      What testimony will you present at trial regarding how you received the deed and why it was not recorded until November 5, 2009?

A: Defendant Higgins told Defendant Merritt [Heffner] she wanted to see Higgins' father's Navy papers – deed was recorded after it was found in the box where Higgins' mother told her she would find papers.

. . . .

5.      When was the deed delivered to you?

> A: The night Defendant Merritt [Heffner] brought Defendant Higgins' father's Navy papers and ammo box to her.

In his brief in support of the motion for summary judgment, Thornton asserted there was no proof the 1990 deed was out of Burnett's actual possession during her lifetime; that she ever surrendered dominion or control over it by any word or act; and that Burnett never communicated to Higgins and Merritt the deed ever existed, as Higgins discovered the 1990 deed while searching for her father's military papers in Burnett's home.

In response to Thornton's motion for summary judgment, Higgins affirmatively asserted that the 1990 deed was delivered during Burnett's lifetime and was in co-tenant/grantee Tonya Merritt Heffner's possession. At the hearing on Thornton's motion for summary judgment, Higgins's attorney argued Higgins and Heffner went to the attorney's office at the time Burnett executed the 1990 deed for the 240 acres, the deed was given to Higgins, Higgins put it in a box, and Burnett never exercised any control over the deed again. However, Higgins filed no affidavit to this effect.

On June 17, 2016, the trial court granted Thornton's motion for summary judgment, set aside the 1990 deed, and quieted title to the remaining 80 acres in the Trust. In doing so, the trial court found there was no evidence Higgins had received the deed prior to Burnett's death or that Burnett intended to pass title to the 240 acres described in the 1990 deed to Higgins and Heffner, and Burnett never lost dominion over the 1990 deed during her lifetime. The trial court further found the undisputed facts, based on Higgins's answers to interrogatories, were that while rummaging through some papers belonging to Burnett nineteen years after the deed had allegedly been executed and over eight years after Burnett's

death, Higgins and Heffner found the 1990 deed and filed it; that in 1994, Burnett had deeded two 80-acres tracts out of the 240 acres, one tract each to Higgins and Heffner, and if Burnett had intended to convey to Higgins and Heffner the total 240 acres described in the 1990 deed as co-tenants, there would have been no need to execute separate deeds to two 80-acre tracts out of the real property described in the 1990 deed separately to Higgins and Heffner in 1994. Higgins filed a timely notice of appeal.

On appeal, Higgins argues the circuit court erred in granting summary judgment to Thornton because he failed to show that there were no material facts in dispute as to whether the 1990 deed to 240 acres had been delivered. Rule 56(c) of the Arkansas Rules of Civil Procedure provides, in pertinent part, that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law on the issues specifically set forth in the motion." Summary judgment is appropriate only when there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Fulmer v. Hurt*, 2017 Ark. App. 117, ___ SW3d ___; *Grant County Unified Cmty. Res. Council, Inc. v. Pennington*, 2017 Ark. App. 116, ___ SW3d ___. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof to demonstrate the existence of a material issue of fact. *Fulmer, supra.* In reviewing a grant of summary judgment, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the party moving for summary judgment

left a material question of fact unanswered. *Grant County Unified*, *supra*. This court reviews the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party; such a review focuses not only on the pleadings but also on the affidavits and other documents. *Fulmer*, *supra*.

Higgins argues references were made at the summary-judgment-motion hearing to a meeting at an attorney's office in 1990 when Burnett executed the deed to the 240 acres, and Burnett signed the deed, handed it to Higgins, and Higgins and Heffner took the deed home (to Burnett's house) and put it in the box where Higgins's father kept important papers. However, none of this information was included in the pleadings, and Higgins did not file an affidavit stating this information.

This case is similar to *Van Huss v. Wooten*, 208 Ark. 332, 186 S.W.2d 174 (1945). In that case, our supreme court affirmed the trial court's cancellation of a deed for failure to deliver the deed in the lifetime of the deceased grantor. In that case, a deed executed by John M. Van Huss on March 9, 1942, purported to convey a 24-acre farm to J.D. Van Huss. John M. Van Huss retained the 1942 deed in his possession until his death on February 14, 1943, and remained in possession of the property until his death. After John M. Van Huss's death, the 1942 deed was found in a suitcase belonging to John M. Van Huss, and J.D. Van Huss took the 1942 deed and recorded it. Daisy Wooten, John M. Van Huss's sister, filed a complaint against J.D. Huss, alleging she was the owner of the land under her brother's will, which devised all of his property to her, and the 1942 deed filed by J.D. Van Huss was void because it was never delivered to J.D. Van Huss during John M. Van Huss's lifetime. The

trial court agreed, holding there was no delivery in law when the grantor kept the deed in his possession with the intent of retaining it, particularly if the grantor kept possession of the property as well. *Van Huss*, 208 Ark. at 335, 186 S.W.2d at 175. Further, our supreme court, quoting *Thompson on Real Property,* § 4136, held, "Where a deed is found in possession of a grantor, a presumption arises that it was never delivered, and the burden of proving delivery is upon the party claiming under the deed." *Id.* at 336, 186 S.W.2d at 176.

Here, Higgins's own answers to interrogatories stated that before Higgins took possession of the 1990 deed, it was located in Burnett's house; it came to be in Higgins's possession after Higgins had told Heffner she wanted to see her (Higgins's) father's papers in an ammo box and Heffner brought the box to Higgins; and the deed was recorded after it was found in the ammo box. Higgins offered no affidavit or other document to contradict her answers to interrogatories and created a material question of fact as to the delivery of the deed. It is clear from Higgins's answers she did not find the 1990 deed in her father's ammo box in Burnett's house until after Burnett had been deceased for several years and Heffner delivered the ammo box to Higgins. The proof indicates there was no delivery of the deed in Burnett's lifetime, and Higgins did not rebut the presumption that the deed had not been delivered. Thus, summary judgment was appropriate.

Higgins cites *Grimmett v. Estate of Beasley*, 29 Ark. App. 88, 777 S.W.2d 588 (1989), for the proposition that when a deed reserves a life estate in the grantor, different rules apply—rather than the general rule that to establish delivery it ordinarily must be shown that the grantor relinquished his or her dominion and control over the instrument—instead, there

is no longer a requirement that it must be shown that the instrument has passed beyond the grantor's control and dominion, and the fact the deed is found in the grantor's effects at his or her death raises no presumption against delivery. However, in *Grimmett*, the grantee had been provided a copy of the deed or had been shown the deed that reserved a life estate in the grantor. In *Cribbs v. Walker*, 74 Ark. 104, 85 S.W. 244 (1905), our supreme court held that a deed had been delivered from a husband to his wife when he reserved a life estate but showed the deed to his wife and then placed the deed in his safe, where it remained until his death. In *Johnson v. Young Men's Building & Loan Association*, 187 Ark. 430, 60 S.W.2d 925 (1933), likewise, our supreme court held that a 1923 deed conveying a hotel from a husband and wife to their seventeen-year-old son had been delivered even though the deed remained in the hotel safe and the parents continued to operate the hotel because the son knew of the deed, all parties knew the combination to the safe, all parties had access to the safe, and it was the purpose of the grantors to retain possession of the property until the death of one of the other of them. In *Barker v. Nelson*, 306 Ark. 204, 812 S.W.2d 477 (1991), our supreme court reiterated that when a grantor retains a life estate under a deed and the grantor shows the grantee the original deed, possession of the original deed instrument is not required to be transferred to the grantee in order to effect a delivery of the deed.

This line of cases is not helpful to Higgins's argument, as Higgins presented no proof she had been shown the 1990 deed by Burnett or knew it existed prior to Burnett's death. After Thornton provided prima facie evidence that the deed was not delivered prior to Burnett's death, Higgins failed to meet proof with proof and to demonstrate the existence of



a material issue of fact. Summary judgment was appropriate under these facts.

Affirmed.

HIXSON and BROWN, JJ., agree.

*Alexander Law Firm*, by: *Hubert W. Alexander*, for appellant.

*Stuart Law Firm, P.A.*, by: *J. Michael Stuart* and *Ginger M. Stuart*, for appellee Bob Thornton, Trustee of the Tonya Merritt Heffner Trust.